*181
 
 OPINION OF THE COURT
 

 Bellacosa, J.
 

 This Court accepted the following State law question, certified to us by the United States Court of Appeals for the Eleventh Circuit:
 

 “What, if any, language does New York law require in a subordination agreement to alert a junior creditor to its assumption of the risk and burden of the senior creditor’s post-petition interest?”
 
 (In re Southeast Banking Corp.,
 
 156 F3d 1114, 1125.)
 

 As framed, the question does not call for the customary affirmative or negative response. We, thus, explain our answer, within the procedural boundaries imposed by this problem, by adopting the general framework of the so-called “Rule of Explicitness”
 
 (see, Matter of Time Sales Fin. Corp.,
 
 491 F2d 841, 844 [3d Cir 1974];
 
 see also, Matter of King Resources Co.,
 
 528 F2d 789 [10th Cir 1976];
 
 In re Kingsboro Mtge. Corp.,
 
 514 F2d 400 [2d Cir 1975]).
 

 Chase Manhattan Bank, through the former Chemical Bank, is the indenture trustee under a 1983 instrument (senior indenture), pursuant to which debtor Southeast Banking Corporation issued $60 million in unsecured notes (senior notes). Gabriel Capital, L.P., holds a substantial portion of the senior notes. The senior indenture instrument provides that, in the event of a default, Southeast will pay the entire amount of principal and interest due, including interest until the date of payment upon overdue principal.
 

 First Trust of New York and Bank of New York are indenture trustees under five indentures (subordinated indentures) pursuant to which Southeast issued more than $300 million of subordinated notes (junior notes). The subordinated indenture instruments contain language subordinating collection to the prior payment in full of the senior notes. These indentures also provide that, upon Southeast’s bankruptcy, the holders of the senior notes must be paid in full before Southeast can make any payment on the subordinated notes. In addition, all payments otherwise allocated to the holders of the subordinated notes must be paid to the holders of the senior notes until the senior notes have been paid in full.
 

 A key part of the dispute as now framed and posed to this Court by the Eleventh Circuit, concerning the appeal pending before it, focuses on the silence of the subordinated indentures as to the issue of post-petition interest. Each of the subordi
 
 *182
 
 nated indentures specifically prescribes that New York law governs enforcement and interpretation of the agreements.
 

 In September 1991, Southeast filed a chapter 7 bankruptcy petition (11 USC ch 7). The Bankruptcy Court ordered Southeast to distribute to the senior trustee amounts sufficient to satisfy the principal and pre-petition interest on the senior notes. The Bankruptcy Code does not provide for the recovery of post-petition interest from the debtor
 
 (see,
 
 11 USC § 502 [b]).
 

 The senior creditors commenced a proceeding in Bankruptcy Court to compel payment of post-petition interest not from Southeast, but from funds that Southeast would otherwise pay on the junior notes. The senior creditors premised their claim on the clause in the subordinated indentures placing the junior creditors’ rights to repayment behind the senior creditors’ right to receive payment in full. The senior creditors also relied on section 510 (a) of the Bankruptcy Code, which provides for the enforcement of subordination agreements.
 

 The Bankruptcy Court held that the senior creditors were not entitled to post-petition interest because the subordination agreements did not expressly provide for that form of recovery from the junior creditors. The United States District Court for the Southern District of Florida sustained that ruling. Both courts based their rulings on Federal law, specifically the judicially created equitable doctrine which has come to be known as the “Rule of Explicitness.”
 

 This doctrine recognizes that parties may use subordination agreements to consent to payment of post-petition interest to senior creditors from funds that would otherwise go to the subordinated creditors. However, the Rule of Explicitness mandates that a senior creditor’s claim for post-petition interest will not be allowed unless the subordination agreement
 
 explicitly
 
 alerted the subordinated creditors to the enhanced risk. As expressed by the Third Circuit: “If a creditor desires to establish a right to post-petition interest and a concomitant reduction in the dividends due to subordinated creditors, the agreement should clearly show that the general rule that interest stops on the date of filing of the petition is to be suspended, at least vis-a-vis these parties”
 
 (Matter of Time Sales Fin. Corp., supra,
 
 at 844).
 

 Both the Bankruptcy Court and the District Court concluded that the 1978 revision to the Bankruptcy Code did not abrogate the rule. The Eleventh Circuit disagreed, with one Judge dissenting. That court held that the 1978 revision, in particular
 
 *183
 
 11 USC § 510 (a), is inconsistent with and therefore abrogates the Rule of Explicitness. Section 510 (a) provides that “[a] subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law.”
 

 The Eleventh Circuit concluded that the phrase “applicable nonbankruptcy law” refers to any relevant Federal or State law. In the absence of any ascertainable Federal law on the subject, the court turned to the choice of law provisions in the indentures and concluded that New York substantive contract law should govern. The court then aptly noted that since the issue of post-petition interest arises almost exclusively in bankruptcy proceedings, New York courts have not previously considered the issue. It then certified this unusually intermingled Federal-State law question to this Court.
 

 In doing so, however, the Eleventh Circuit concomitantly uttered a binding threshold ruling that the “paid in full” language in the pertinent subordination agreements is ambiguous. The court also frankly acknowledged the longstanding reliance on the Rule of Explicitness by parties entering into these kinds of subordinated indentures. It “wonder[ed] whether the New York courts would disturb the heretofore uniform treatment of this question, particularly given the evidence that the capital markets appear to have adjusted to the Rule of Explicitness”
 
 (In re Southeast Banking Corp.,
 
 156 F3d 1114, 1124,
 
 supra, certified question accepted
 
 92 NY2d 945). The court lastly conjectured that, given New York’s role as a financial capital, the New York courts “would be loath to depart from prior practice and thus radically reduce the current value of debt held subject to the condition of subordination until the senior creditor receives ‘payment in full’ ”
 
 (id.,
 
 at 1125).
 

 Senior Circuit Judge Fay dissented and voted simply to affirm the District Court’s affirmance of the Bankruptcy Court judgment in favor of the subordinated creditors. Judge Fay agreed with the conclusion reached by the lower Federal courts that the 1978 revision to the Bankruptcy Code does not abolish the Rule of Explicitness.
 

 For the purposes of answering the particular question posed to us, we are confined by key features of the Eleventh Circuit’s ruling. Nevertheless, we face up to whether New York should adopt its version of the Rule of Explicitness as a guiding interpretive principle of State contract dispute resolution in cases such as this. In doing so, we are acutely cognizant of the
 
 *184
 
 practical effect that our answer to the certified question will have on a vast sea of subordination agreements not before us now in live cases or controversies, nor even within the framework of this Eleventh Circuit litigation, involving enormous sums of outstanding public debt. Indeed, while it is not our forum’s role to rule ultimately on the subordination agreements at issue in this case, we recognize that they and many others were drafted and entered into before the Rule of Explicitness was called into question by the ruling of the Eleventh Circuit in the instant case.
 

 This practical policy consequence is a matter of legitimate concern in the common-law developmental process, especially with respect to commercial matters where reliance, definiteness and predictability are such important goals of the law itself, designed so that parties may intelligently negotiate and order their rights and duties. Parties to subordination agreements undoubtedly relied on the Rule — their lawyers would have been quite remiss had they not — since recent case law, as well as a leading authority and many commentators have consistently recognized the continued vitality of the Rule
 
 (see, In re Ionosphere Clubs,
 
 134 Bankr 528; 4 Collier, Bankruptcy § 510.03 [3] [15th ed rev]; Landers and Coleman,
 
 Claims Issues,
 
 767 PLI/Comm 819, 846 [1998]; Comm on Bankruptcy and Corporate Reorganization of Assn of Bar of City of NY,
 
 Structured Financing Techniques,
 
 50 Bus Law 527, 555, n 80 [1995]; Zinman,
 
 Under the Spreading Bankruptcy: Subordinations and the Codes,
 
 2 Am Bankr Inst L Rev 293, 294, n 10 [1994]; Goldstein and Mckenna,
 
 Intercreditor and Subordination Issues,
 
 793 PLI/Corp 679, 700 [1992]; Sheneman,
 
 Classification and Allowance of Claims,
 
 429 PLI/Comm 931, 974 [1987]; Phelan, Conner and Kinsella,
 
 Word Wars: Structuring and Documenting Secured Term Loans Under the Bankruptcy Code,
 
 427 PLI/Comm 127, 274 [1987]).
 

 In addition to practical realities, however, we are persuaded that the commercial and legal policies underlying the Rule of Explicitness remain sound and relevant. The general rule in bankruptcy is that interest stops accruing against a debtor upon the date of filing of a petition
 
 (see, Vanston Comm. v Green,
 
 329 US 156, 163; 11 USC § 502 [b] [2]). This rule recognizes that post-petition delay in distribution by a debtor “results by operation of law and prevents creditors from profiting or suffering a loss in relation to each other because of the delay”
 
 (In re Southeast Banking Corp.,
 
 156 F3d 1114, 1119,
 
 supra,
 
 citing
 
 Vanston Comm. v Green,
 
 329 US 156,
 
 supra).
 

 
 *185
 
 The Rule of Explicitness evolved as an equitable principle of contract construction in Federal common law to rectify the perceived inequity that results when, pursuant to a subordination agreement, a junior creditor’s potential distributions go first to satisfy post-petition interest of a senior creditor
 
 (In re Southeast Banking Corp.,
 
 212 Bankr 682 [SD Fla 1997]). If a senior creditor is allowed to recover post-petition interest from a subordinated creditor, a senior creditor could end up receiving more recovery than it would have been entitled to against the debtor, while the subordinated creditor’s recovery is proportionately diminished (4 Collier, Bankruptcy § 510.03 [3] [15th ed rev]). Because this consequence violates the general rule against entitlement to post-petition interest, courts until now have consistently required that the language of the instrument make absolutely clear that a subordinated creditor intended also to subordinate post-petition interest entitlements
 
 (see, Matter of King Resources Co.,
 
 528 F2d 789,
 
 supra; In re Kingsboro Mtge. Corp.,
 
 514 F2d 400,
 
 supra; Matter of Time Sales Fin. Corp.,
 
 491 F2d 841,
 
 supra; In re Ionosphere Clubs,
 
 134 Bankr 528,
 
 supra).
 

 The 1978 revisions to the Bankruptcy Code did not change the general rule that creditors are not entitled to post-petition interest. Thus, considerations underlying the Rule of Explicitness survive. Indeed, they echo the policies underlying
 
 Matter of Pavone Textile Corp. (Bloom)
 
 (302 NY 206,
 
 affd sub nom. United States v Bloom,
 
 342 US 912).
 

 Pavone
 
 provides an analytical counterpart and precedential building block for our recognition of the applicability of the Rule of Explicitness to the instant controversy. In
 
 Pavone,
 
 the assignor made a general assignment for the benefit of creditors pursuant to article 2 of the Debtor and Creditor Law. This Court noted the general rule that creditors are not entitled to post-assignment interest because the “ ‘delay in distribution is the act of the law; * *
 
 *
 
 a necessary incident to the settlement of the estate’ ”
 
 (id.,
 
 at 210, quoting
 
 Thomas v Western Car Co.,
 
 149 US 95, 116-117). Construing the general rule as applying to Social Security, withholding and unemployment insurance tax claims, the Court disallowed claims by the United States and the State of New York for post-assignment interest. The State of New York, one of the preferred creditors, sought to trump the general rule by relying on Labor Law § 574, which provides that the State’s priority as to unemployment insurance contributions includes “any interest * * * thereon”
 
 (id.,
 
 at 212). The Court held that this language did not supersede the
 
 *186
 
 general rule: “the general rule as to post-assignment interest prevails in the absence of any statute
 
 expressly
 
 providing for such interest”
 
 (id.,
 
 at 213 [emphasis supplied]). The parallel construction and application are reasonable to carry over to the instant certified question concerning New York contract law insofar as it controls or impacts upon the underlying dispute in the Federal courts.
 

 In
 
 Pavone,
 
 this Court refused to undercut reliance by parties on the general rule that creditors are not entitled to post-assignment interest in the absence of express statutory language. In like fashion, the Rule of Explicitness safeguards reliance by parties on the analogous general rule that creditors are not entitled to post-petition interest in bankruptcy proceedings absent express language to that effect in subordination agreements ordering priorities among the contracting parties.
 

 This Court is, therefore, satisfied for purposes of answering this question — in the spirit of comity but also within the usual certification constraints, as well as within the confines of interrelated threshold rulings already made by the Eleventh Circuit — that, in our “common-law interstitial developmental process”
 
 (Rooney v Tyson,
 
 91 NY2d 685, 694), this Court can and should recognize the Rule of Explicitness.
 

 Accordingly, the certified question should be answered as follows: In accordance with the Rule of Explicitness, New York law would require specific language in a subordination agreement to alert a junior creditor to its assumption of the risk and burden of allowing the payment of a senior creditor’s post-petition interest demand.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Following certification of a question by the United States Court of Appeals for the Eleventh Circuit and acceptance of the question by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered as follows: In accordance with the Rule of Explicitness, New York law would require specific language in a subordination agreement to alert a junior creditor to its assumption of the risk and burden of allowing the payment of a senior creditor’s post-petition interest demand.