AM COSMETICS INC., a Delaware Corporation, and R.H. Cosmetics Corporation, A New York Corporation, Plaintiffs,

v.

Richard SOLOMON, Individually, Myra Smolev, (a/k/a) Myra Solomon, Individually and Doing Business as Myra Smolev Consulting, Sydra Smolev, Individually, and Just Having Fun, Inc., Defendants/Third Party Plaintiffs,

v.

Harry Smith, Third Party Defendant.

No. 97 Civ. 6015(RCC).

United States District Court, S.D. New York.

Sept. 23, 1999.

William J. Wolf, Bathgate, Wegener & Wolf, Lakewood, NJ, for plaintiffs.

Maxine H. Neuhauser, Epstein Becker & Green, PC, Newark, NJ, for defendants.

## MEMORANDUM AND ORDER

CASEY, District Judge.

Before the Court is Defendants/Third Party Plaintiffs' motion for partial summary judgment dismissing Counts Three through Seventeen of the Complaint and granting affirmative relief on Counts One, Two, Eight and Fifteen of their Counterclaim. For the reasons set forth below, Defendants' motion is denied.

## BACKGROUND

On December 3, 1996, Plaintiff AM Cosmetics (hereinafter AM) purchased all of the outstanding capital stock of R.H. Cosmetics (hereinafter RH). Defendants/Third Party Plaintiffs Richard Solomon, Myra Smolev, and two other individuals owned all of RH's stock. Mr. Solomon and Ms. Smolev (hereinafter the Defendants or Solomon and Smolev, respectively) are married. Pursuant to a written agreement, the parties agreed that AM would purchase RH for a cash price of approximately $7,000,000. The agreement was executed on January 10, 1997.

Pursuant to the terms of the agreement, AM tendered one cash payment to Solomon of $4,267,000, and one cash payment to Smolev, in the amount of $911,000. Plaintiffs and Solomon then executed a promissory note [hereinafter the Note] for the balance of the transaction, in the amount of $3,000,000.

On the same day the stock purchase agreement was executed, Plaintiffs offered Solomon a separate written employment contract (hereinafter the employment agreement). Plaintiffs and Solomon agreed that he would be employed as a consultant, at an annual salary of $400,000. Plaintiffs also retained Smolev, in the same capacity and salary that she received at RH. On January 24, 1997, Smolev was hired by oral agreement as a consultant, at an annual salary of $200,000. Her oral agreement included a stipulation that she not compete with Plaintiffs or their customers during her employment. Plaintiffs terminated Smolev on February 20, 1997, and terminated Solomon on July 2, 1997.

Plaintiffs allege that during the course of their respective employment terms, Solomon and Smolev had continued access to Plaintiff's trade secrets and confidential information. Plaintiffs further allege that beginning in December of 1996, Solomon, Smolev, and their daughter, Sydra Smolev, conspired to steal confidential information and material secrets belonging to Plaintiffs. Plaintiffs maintain Defendants used this stolen information to manufacture its own cosmetic products, and attempted to compete with, and steal business from Plaintiffs. Plaintiffs further allege that on May 28, 1997, Defendants entered Plaintiffs' premises without Plaintiffs' knowledge or consent and stole files and other documents owned by Plaintiffs.

Plaintiffs filed the instant action on August 12, 1997, claiming that Defendants: violated the Racketeer Influenced And Corrupt Organizations Act of the Organized Crime Control Act of 1970, as amended, 18 U.S.C. § 1965 (the RICO Act); conspired to violate the RICO Act; breached their respective contracts; breached the covenant of good faith and fair dealing; misrepresented facts; breached their fiduciary duty to Plaintiffs; engaged in unfair and deceptive trade practices; committed fraud; tortiously interfered with Plaintiffs' business; and, were unjustly enriched.

In response, Defendants deny all of Plaintiffs' allegations, and allege that Plaintiffs: breached the terms of the stock purchase agreement; breached the terms of Solomon's and Smolev's consulting agreements; breached the covenant of good faith and fair dealing; misrepresented facts; committed fraud; violated the Securities Exchange Act; defamed Smolev; committed trade libel; tortiously interfered with Smolev's business; were unjustly enriched; and, defaulted on Solomon's promissory note.

Defendants now bring the instant motion before the Court.

## DISCUSSION

Summary judgment must be granted when all available evidence "show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *see Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 764 (2d Cir.1998). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). All facts must be viewed in the light most favorable to the nonmovant, drawing all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *Quinn*, 159 F.3d at 764). To withstand a summary judgment motion, evidence must exist upon which a reasonable trier of fact could find for the nonmoving party. *Liberty Lobby.*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11; *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

### I. *Plaintiff's Claims*

#### *Solomon's Breach*

Count Three of the Complaint alleges that Solomon breached both his employment agreement and the stock purchase agreement entered into with AM. Count Four alleges that Solomon breached his duty of good faith and fair dealing concerning these agreements. Defendants argue that Plaintiffs waived their claim regarding Solomon's alleged breach of the employment agreement because AM allowed Solomon to continue his performance under the employment agreement rather than terminating him immediately. *See Filmline (Cross–Country) Prod. Inc. v. United Artists Corp.*, 662 F.Supp. 798, 804–806 (S.D.N.Y.1987), *aff'd* 865 F.2d 513 (2d Cir.1989).

Plaintiffs counter that after they learned of Solomon's alleged breach in February 1997, they advised him his conduct was unacceptable, and then engaged in settlement negotiations. Plaintiffs further claim that their actions did not constitute a waiver because once their negotiations with Solomon proved unfruitful, they terminated Solomon immediately, and commenced legal action against him immediately.

Under New York law, if one party commits a material breach of contract, the other party to the contract is relieved of further performance. *Alesayi Beverage Corp. v. Canada Dry Corp.*, 947 F.Supp. 658, 667 (S.D.N.Y.1996). Additionally, if one party to a contract materially breaches the contract during the course of a continuing performance, the injured party has two options: he may terminate the contractual relations at that time or he may choose to continue performance under the contract despite that breach. *See Nat'l Westminster Bank v. Ross*, 130 B.R. 656, 675 (S.D.N.Y.1991), *aff'd sub nom, Yaeger v. Nat'l Westminster*, 962 F.2d 1 (2d Cir. 1992). If the injured party chooses not to terminate the contract, he surrenders his right to terminate later based on that breach. *See id.* Moreover, where a party to an agreement has actual knowledge of a breach, but elects to continue performance, that party waives the right to sue the breaching party unless timely notice of the

breach was provided to the breaching party. *See id.*

Waiver involves the intentional relinquishment of a known right. "However, a party's reluctance to terminate a contract upon a breach and its attempts to encourage the breaching party to adhere to its obligations under the contract do not necessarily constitute a waiver of the innocent party's rights in the future." *Seven-Up Bottling Co. Ltd. v. PepsiCo, Inc.,* 686 F.Supp. 1015, 1023, (S.D.N.Y.1988). Additionally, waivers of rights in contract will not be inferred unless the intent to waive is clear. *See id.* (citing *Schubtex Inc. v. Allen Snyder, Inc.,* 49 N.Y.2d 1, 424 N.Y.S.2d 133, 399 N.E.2d 1154 (1979) (Gabrielli, J., concurring)). Here, a material issue of fact exists as to whether Solomon received notice of his alleged breach. Because a reasonable trier of fact could find that Plaintiffs attempted to resolve their differences with Solomon after learning of his alleged breach, *see, e.g.,* Plaintiffs' Statement ¶¶ 261, 262, 269, and that their attempt did not constitute a waiver by Plaintiffs, Defendants' motion for summary judgment on Counts Three and Four of the Complaint is denied.

### Smolev's Breach

Count Seven alleges that Smolev breached both the stock purchase agreement and her oral contract of employment. Specifically, Plaintiffs allege that Smolev: stole trade secrets from Plaintiffs; stole computer records and other confidential materials from Plaintiff; competed with Plaintiff by starting her own business; and, attempted to solicit Plaintiffs' employees to work for her. Count Eight alleges that Smolev breached her duty of good faith and fair dealing in negotiating the agreements at issue. Defendants argue that summary judgment is appropriate for two reasons. First, Defendants argue that Plaintiffs have no evidence to substantiate their various claims of theft and breach of contract. Second, Defendants argue that any claims arising from Smolev's oral con-

sulting agreement are barred as a matter of law.

In her deposition, Smolev admitted she understood from her oral contract that there was an understanding that she "would not be at cross purposes with AM." *See* Plaintiffs' Statement ¶ 71. She also admitted that she sold products to competitors while she was still employed at AM. The deposition of Max Lewis, a senior officer of AM, may establish that Smolev took files from a computer by utilizing a password known only by her and a few select individuals; and that the products displayed by her in a trade show in Bologna, Italy were based on formulas that were developed by her at AM. *See* Plaintiffs' Statement ¶ 257. This evidence could allow a reasonable trier of fact to find that Smolev at least breached her oral non-compete agreement with Plaintiffs.

Defendants argue that Plaintiffs' claims for breach are meritless because Smolev's oral non-compete agreement is void under New York law. First, Defendants' argue that the terms of Smolev's agreement are imprecise and indefinite. Second, Defendants argue that Smolev's agreement did not comply with the Statute of Frauds.

Smolev's deposition testimony revealed that she understood she was not to compete with AM, or its customers. *See* Plaintiffs' Statement ¶ 71–C. Smolev also admitted she knew that she would continue in the same job capacity and under the same terms of employment as an employee of RH. *See* Plaintiffs' Statement ¶ 71–A. Thus, credible evidence exists from which a reasonable trier of fact could decide that both parties understood that Smolev's employment with Plaintiffs contained a non-compete clause. Even if an express understanding was not reached as to Smolev's non-compete clause, the New York Court of Appeals has held, "in a proper case, an implied-in-fact covenant not to compete for the term of employment may be held to exist." *American Broad. Cos. v. Wolf,* 52 N.Y.2d 394, 406, 438 N.Y.S.2d

482, 488, 420 N.E.2d 363 (1981). Therefore, Defendants' first argument is insufficient to support a motion for summary judgment.

In support of their claim that Smolev's agreement is void because it violates the Statute of Frauds, Plaintiffs rely on *American Federal Group Ltd. v. Rothenberg*, 136 F.3d 897 (2d Cir.1998). Defendants argue that *Rothenberg* rendered all non-written covenants not to compete void in New York. However, Defendants Statute of Frauds defense is inapplicable to this case. First, *Rothenberg* focused on a covenant not to compete pertaining to a post-employment period. Here, Smolev's alleged agreement concerned the period of her employment. Second, Defendants failed to plead the Statute of Frauds as an affirmative defense in their answer. Rule 8(c) of the Federal Rules of Civil Procedure requires a party filing a responsive pleading to set forth all affirmative defenses. "Failure to plead an affirmative defense in the answer results in the waiver of that defense and its exclusion from the case." *Satchell v. Dilworth*, 745 F.2d 781, 784–85 (2d Cir.1984) (citation omitted.) Thus, neither of Defendants' arguments regarding Plaintiffs' breach of contract and breach of the duty of good faith and fair dealing claims are sufficient to support a motion for summary judgment on Count Seven of the Complaint.

### Misrepresentation of Fact/Fraud Claims

Counts Five and Nine of the Complaint charge Solomon and Smolev, respectively, with misrepresentations of fact. Count Twelve of the Complaint charges both Defendants with fraud. Plaintiffs claim that Defendants misrepresented that they would honor the terms of both the stock purchase agreement and their respective employment agreements. Plaintiffs further claim that both Defendants gave misleading factual information contained in sections 2.27 and 2.29 of the stock purchase agreement. Count Twelve's allegation of fraud arises out of the alleged misrepresentations of fact. Defendants move for summary judgment on the misrepresentation claim arguing that Plaintiffs cannot identify any facts allegedly misrepresented. Defendants also argue that summary judgment is appropriate on the fraud claim because Plaintiffs may not simultaneously bring an action for breach of contract and fraud.

To state a claim for misrepresentation, Plaintiffs must show that the Defendants made a promise with a preconceived and undisclosed intention of not performing it. *See Deerfield Comm. Corp. v. Chesebrough–Ponds, Inc.*, 68 N.Y.2d 954, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (1986). Under New York law, there are five elements required to prove fraud: (1) misrepresentation of a material fact; (2) the falsity of that misrepresentation; (3) scienter, or intent to defraud; (4) reasonable reliance on that representation; and (5) damage caused by such reliance. *Lind v. Vanguard Offset Printers, Inc.*, 857 F.Supp. 1060, 1067 (S.D.N.Y.1994) (citing *May Dep't Stores Co. v. International Leasing Corp.*, 1 F.3d 138, 141 (2d Cir. 1993); *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970–71 (2d Cir.1987); *Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 250 N.E.2d 214 (1969)).

Plaintiffs identify specific deposition testimony that allegedly demonstrates that Solomon and Smolev deliberately withheld knowledge that Plaintiffs' customers, "were going to source directly with nail polish fillers," in an attempt to retain as much of the cash flow as possible resulting from these transactions. *See* Plaintiffs' Statement ¶ 271. Therefore, the claim that Solomon and Smolev disclosed confidential information they acquired through the agreement is supported by evidence obtained through discovery.

Nevertheless, Defendants maintain that Plaintiffs' evidence may not serve as the basis for a fraud action. Defendants, citing *Oei v. Citibank, N.A.*, 957

F.Supp. 492, 519–20 (S.D.N.Y.1997), argue that "where an express contract exists governing the relations between the parties, a theory of fraud or misrepresentation of the facts is not available." However, not all fraud actions arising out of a contractual relationship are precluded. Although it is well settled under New York law that "mere allegations of breach of contract do not give rise to a claim for fraud or fraudulent inducement," *Sudul v. Computer Outsourcing Servs.*, 868 F.Supp. 59, 61–62 (S.D.N.Y.1994) (citations omitted), a fraud claim may survive, where "the allegations contained [in the fraud claim] are separate and distinct from those giving rise to the breach of contract claim." *Tuck Indus., Inc. v. Reichhold Chems., Inc.*, 151 A.D.2d 565, 566, 542 N.Y.S.2d 701 (2d Dep't 1989); *see also Smehlik v. Athletes and Artists, Inc.*, 861 F.Supp. 1162, 1171 (W.D.N.Y.1994). Here, Plaintiffs' fraud claim is distinct from their breach of contract claim. Plaintiffs' fraud claim is based on an alleged misrepresentation of fact made by the Defendants before the execution of the stock purchase agreement, while Plaintiffs' breach of contract claim is based on Defendants' alleged conduct during their employment. Therefore, Plaintiffs' allegations may also support a fraud claim. Accordingly, Defendants' motion for summary judgment on Counts Five, Nine and Twelve is denied.

### Breach of Fiduciary Duty

Counts Six and Ten of the Complaint charge Solomon and Smolev, respectively, with breaching their fiduciary duty to Plaintiffs. Defendants move for summary judgment based on the argument that neither Solomon nor Smolev can be considered fiduciaries of Plaintiffs. Plaintiffs contend that through both the stock purchase and consulting agreement Solomon and Smolev acquired a degree of knowledge and bud from the Plaintiffs that placed them in a fiduciary relationship with the Plaintiffs.

An employer-employee relationship is not fiduciary in nature. *See Van Brunt v. Rauschenberg*, 799 F.Supp. 1467, 1474 (S.D.N.Y.1992); *Ingle v. Glamore Motor Sales, Inc.*, 140 A.D.2d 493, 528 N.Y.S.2d 602, 604 (2d Dept.1988), *aff'd*, 73 N.Y.2d 183, 538 N.Y.S.2d 771, 535 N.E.2d 1311 (1989). Moreover, an arms-length lender-borrower or creditor-debtor contractual relationship generally may not give rise to a fiduciary obligation on the part of the lender or creditor. *See Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114, 122, 672 N.Y.S.2d 8 (1998); *Landes v. Sullivan*, 235 A.D.2d 657, 660, 651 N.Y.S.2d 731 (3rd Dep't 1997); *Banque Nationale de Paris v. 1567 Broadway Ownership Assocs.*, 214 A.D.2d 359, 360, 625 N.Y.S.2d 152 (1st Dep't 1995). A fiduciary relationship does not need to be formalized in writing, however, and any inquiry into whether such obligation exists is necessarily fact-specific to the particular case. *See Wiener*, 241 A.D.2d at 122, 672 N.Y.S.2d 814. Thus, beyond what may be memorialized in writing, to determine whether a fiduciary relationship exists, a court may examine whether a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge. *See Chester Color Separations v. Trefoil Capital Corp.*, 222 A.D.2d 276, 636 N.Y.S.2d 613 (1995); *Mandelblatt v. Devon Stores, Inc.*, 132 A.D.2d 162, 167–68, 521 N.Y.S.2d 672 (1987); *Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 318 (2d Cir.), *motion to vacate denied*, 11 F.3d 381 (2d Cir.1993). Thus, ongoing conduct between parties may give rise to a fiduciary relationship that will be recognized by the courts. *See, e.g., Kern v. Robert Currie Assocs.*, 220 A.D.2d 255, 632 N.Y.S.2d 75 (1995).

Here, Solomon and Smolev were not hired as traditional employees of Plaintiffs. Rather, Plaintiffs reposed in Defendants a degree of trust and confidence necessary for a fiduciary relationship. Solomon and Smolev allegedly had inti-

mate formula and product knowledge of Plaintiffs' products. The confidentiality and non-compete provisions of the various agreements entered into by the parties also suggested a fiduciary relationship. Furthermore, the remedy provisions contained within the stock purchase agreement reads, in part:

> The parties hereto acknowledge that the remedy at law for any breach of the obligations undertaken by the parties hereto may be insufficient and inadequate and that the parties hereto shall be entitled to equitable relief, in addition to remedies at law. In the event of action to enforce the provisions of this Agreement, Sellers and Buyers shall waive the defense that there is an adequate remedy at law.

Therefore, sufficient evidence exists which could persuade a reasonable trier of fact to find that a fiduciary relationship existed between Plaintiffs and Defendants. Accordingly, Defendants' motion for summary judgment on Counts Six and Ten is denied.

### Unfair and Deceptive Practices Claims

Count Eleven of the Complaint alleges' that the Defendants engaged in unfair and deceptive trade practices. Defendants maintain that this common law claim, requires deception of a purchaser in a business transaction. Defendants then argue that because Plaintiffs cannot show that its customers were misled into purchasing items from Smolev, summary judgment is appropriate. However, Defendants overlook a statutory basis for Plaintiffs' claim.

■ New York General Business Law (GBL) § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." The statute affords a private right of action to any person injured by the deceptive acts or practices committed by a business. See GBL § 349(h). Again, Smolev's and Lewis' deposition testimony could persuade a reasonable trier of fact to find that Defendants violated GBL § 349, to wit, Smolev allegedly attempted to sell her own cosmetics while employed by Plaintiffs. Therefore, Defendants' motion for summary judgment on Count Eleven is denied.

### Tortious Interference

■ Count Thirteen alleges that Defendants tortiously interfered with Plaintiffs' prospective economic advantage. Defendants argue that no evidence exists to prove that either Solomon or Smolev competed with Plaintiffs. In order to show that a party tortiously interfered with another's prospective economic advantage, the injured party must prove: (1) Plaintiff conducted business with a third party; (2) Defendants interfered with those relations; (3) Defendants acted with the sole purpose of harming the Plaintiff, or used dishonest, unfair, or improper means; and (4) injury to Plaintiffs' relationship with the third party. See Purgess v. Sharrock, 33 F.3d 134, 141 (2nd Cir.1994).

■ Here, several contested material facts exist concerning Smolev's relationship with Plaintiffs' clients, particularly with Townley Jewelry. Furthermore, because Smolev's and Lewis' deposition testimony suggests that Smolev had interacted with certain of AM's customers to an extent that could support a claim of tortious interference, Defendants motion for summary judgment on Count 13 is denied.

### Conspiracy and Aiding and Abetting Conspiracy

Count Fifteen alleges that Defendants entered into a conspiracy to defraud Plaintiffs, and Count Sixteen alleges that Defendants aided and abetted each other in executing the conspiracy. Defendants argue that summary judgment is appropriate on these claims because New York law does not recognize an independent tort of civil conspiracy. See Sado v. Ellis, 882 F.Supp. 1401, 1408 (S.D.N.Y.1995).

■ However an underlying actionable tort may sustain a cause of action for

civil conspiracy under New York law. *See Baker v. R.T. Vanderbilt Co. Inc.,* 260 A.D.2d 750, 688 N.Y.S.2d 726, 729 (1999). Furthermore, Plaintiffs may plead the existence of a conspiracy in order to connect the actions of the individual Defendants with an actionable, underlying tort, and establish that those actions were a part of a common scheme. *See Litras v. Litras,* 254 A.D.2d 395, 681 N.Y.S.2d. 545 (1998). Here, Plaintiffs have alleged multiple independent tortious claims. Thus, a claim of civil conspiracy is proper under New York law. Accordingly, Defendants motion for summary judgment on Counts Fifteen and Sixteen is denied.

### Unjust Enrichment

■ Count Seventeen alleges that Plaintiffs were unjustly enriched by their actions at Plaintiffs' expense. In order to satisfy a claim of unjust enrichment, a plaintiff must prove that: (1) a party received a benefit, and (2) an injustice would result if the defendant retained the benefit without paying for it. *See Seiden Assocs. Inc. v. ANC Holdings, Inc.,* 754 F.Supp. 37, 38 (S.D.N.Y.1991). Defendants contend that the various employment and stock agreements govern Plaintiffs' claims, and therefore an action for recovery in quasi-contract cannot lie.

■ Plaintiffs argue that Federal Rule of Civil Procedure 8(e)(2) specifically allows a party to plead alternative facts and theories regarding the same subject matter. Thus, Plaintiffs argue that they are permitted to allege breach of an implied contract as well as breach of an express contract, because Defendants received benefits from their inappropriate conduct, and equitable relief may be sought where legal relief is unavailable. Thus, under Rule 8(e)(2), Plaintiffs may allege alternative theories, and Defendants' summary judgment motion on Count 17 is denied.

## II  *Defendants' Counterclaim*

### Breach of the Employment Agreement

Count One of Defendants' Counterclaim charges Plaintiffs with breaching Solomon's employment agreement, and Count Two asks for declaratory relief with respect to the same. Specifically, Defendants allege that Solomon was fired without proper cause or notice, and was not paid for his work in accordance with the employment agreement. Defendants maintain that the express terms of Solomon's employment agreement obligated AM to provide Solomon with 30 days notice of termination for cause, and that AM remained obligated to pay Solomon monthly compensation for the remaining term set forth in the agreement, even after his termination. Defendants argue that these actions constituted an anticipatory breach of the employment agreement, and that because the terms of the employment agreement are unambiguous, they are entitled to summary judgment on Counts One and Two of their Counterclaim.

Plaintiffs argue that Solomon's employment agreement itself was terminated, rather than Solomon being terminated pursuant to the employment agreement, because Solomon breached his employment agreement by violating a non-compete clause with AM. The non-compete clause includes, but is not limited to, actions taken through wives, children, parents, siblings or any other relatives, friends, trustees, agents or employees, subsidiaries, holding companies, business entities, or affiliates. *See* Defendants' Statement of Undisputed Facts, ¶ 62. Plaintiffs argue that Solomon violated this clause by assisting his wife, Smolev, in forming her own cosmetics and consulting companies, Myra Smolev Consulting and Just Having Fun, Inc., and by attempting to steal both clients and revenue from Plaintiffs.

■ "Where contractual language is susceptible to at least two fairly reasonable interpretations, this presents a triable issue of fact, and summary judgment is inappropriate." *Ametex Fabrics Inc. v. Just In Materials, Inc.,* 140 F.3d 101, 107 (2d Cir.1998) (quoting *Garza v. Marine*

*Transport Lines, Inc.,* 861 F.2d 23, 26, (2d Cir.1988)). Here, the extent of Solomon's involvement in Myra Smolev Consulting and Just Having Fun, Inc., is difficult to ascertain. Plaintiffs have presented evidence, including deposition testimony and letters from Smolev's customers that could permit a rational trier of fact to find that Solomon breached his employment agreement by violating the non-compete clause. If so, Plaintiffs' termination of the employment agreement may be justified, as a party is relieved from contractual performance under a contract where another party's breach is material. *See In re Lavigne,* 114 F.3d 379 (2d Cir.1997). However, a literal reading of Smolev's employment agreement does not specifically prohibit Smolev from engaging in business endeavors. Thus, whether Solomon assisted his wife in her enterprises, and whether his conduct amounted to a breach of his employment agreement is one best left to a jury. Therefore, Defendants' summary judgment motion for affirmative relief on the first two counts of Defendants' Counterclaim is denied.

### Promissory Note

Count Eight of Defendants' Counterclaim alleges that AM breached its duty of good faith and fair dealing both in purchasing RH and executing Solomon's promissory note. Count Fifteen of Defendants' Counterclaim alleges that Plaintiffs defaulted on the same instrument.

Defendants allege that Plaintiffs breached their duty to deal in good faith because they attempted to exercise an offset provision contained within the Note, and therefore sought to avoid payment to Solomon under its terms. Specifically, Defendants allege that Plaintiffs deliberately and unilaterally entered into agreements with creditors in order to prevent payment to Solomon under a subordination provision contained in the Note. *See* Defendants' Brf. in Support of Motion for Partial Summary Judgment at 11.

With respect to Count Fifteen of the Counterclaim, Defendants allege that Plaintiffs' declaration on July 2, 1997, that it had incurred superior indebtedness constituted an anticipatory breach under the express terms of the Note. This declaration, according to Defendants, also constituted a clear default on the terms of the Note, entitling Solomon to summary judgment. In response, Plaintiffs argue that the express terms of the Note entitle them to unilaterally terminate their scheduled payments under the Note, when those payments would be inferior and subordinate to an agreement entered into with another party. *See* Plaintiffs' Brf. in Opposition to Motion for Partial Summary Judgment at 11–12. Plaintiffs also deny that Solomon's consent was required to change the terms of the Note under the express terms of the Note, or governing law. Sections 2.1 and 2.2 of the Note state, in pertinent part:

> *2.1 Superior Indebtedness.* Anything in this Note to the contrary notwithstanding, the indebtedness evidenced by this Note shall be subordinate and junior in right of payment, in the manner hereinafter set forth, to indebtedness of Obligor for money borrowed, whether outstanding at the date of this Note or incurred after the date of the Note. . . .

> *2.2 . Suspension of Payment in Certain Circumstances.* Anything in this Note to the contrary notwithstanding, no payment of principal or interest on this Note may be made by Obligor at any time where the making of such payment by Obligor would be in violation of the terms or provisions of any credit or loan documents relating to any Superior Indebtedness or the holders thereof.

Subordination agreements are generally upheld. *See, e.g., In re Southeast Banking Corp.,* 93 N.Y.2d 178, 688 N.Y.S.2d 484, 710 N.E.2d 1083 (1999); *Matter of Weis Sec., Inc.,* 605 F.2d 590 (2d Cir.1978). The subordination provisions contained within the Note provide that the instrument shall

become inferior to any other debt, regardless of when such debt is assumed. Hence, Plaintiffs' assumption of superior debt does not appear to constitute an anticipatory breach.

Nor does Plaintiffs' assumption of superior debt constitute a breach of the duty of good faith and fair dealing. "A party's actions may implicate the implied covenant of good faith when it acts so directly to impair the value of the contract for another party that it may be assumed that they are inconsistent with the intent of the parties." *Bank of China v. Chan,* 937 F.2d 780, 789 (2d Cir.1991); *see also M/A–COM Sec. Corp. v. Galesi,* 904 F.2d 134, 136 (2d Cir.1990). As a matter of law, enforcing a contract provision agreed to by both parties can not constitute a breach of good faith. Although Defendants alleged that Plaintiffs incurred their debt deliberately, they present no evidence to support their claim, other than the that the indebtedness occurred after Solomon's termination. "Summary judgment is appropriate in an action on a promissory note upon a showing of no material question of fact concerning execution and default." *AAI Recoveries, Inc. v. Pijuan,* 13 F.Supp.2d 448, 450 (S.D.N.Y.1998). Because there are disputed issues of fact regarding the allegations of default in the instant case, Defendants' motion for summary judgment granting affirmative relief on Counts Eight and Fifteen is denied.

## CONCLUSION

For the reasons stated above, Defendants' motion for partial summary judgment dismissing Counts Three through Seventeen of the Complaint and granting affirmative relief on Counts One, Two, Eight and Fifteen of the Counterclaim is denied.

SO ORDERED.