**In re BANK OF NEW ENGLAND CORPORATION, Debtor.**

**HSBC Bank USA, as Indenture Trustee, and JP Morgan Chase Bank f/k/a the Chase Manhattan Bank, as Indenture Trustee, Appellants,**

v.

**Bank of New England Corporation, Appellee.**

**No. CIV.A.01–12229–RGS.**

United States District Court, D. Massachusetts.

Feb. 3, 2003.

Douglas B. Rosner, Goulston & Storrs, PC, Boston, MA, Joseph N. Froelich, Robert C. Shenfeld, Sarah L. Reid, Kelley, Drye & Warren, New York City, for HSBC Bank USA and JP Morgan Chase Bank.

Robin Russell, Andrews & Kurth, LLP, Houston, TX, for Bank of New England Corp.

Dianne F. Coffino, Dewey Ballantine, New York City, for Chemical Bank Delaware.

Katherine Constantine, Monica L. Clark, Dorsey & Whitney, LLP, Minneapolis, MN, for US Bank Trust National Association.

Christopher E. Palmer, William F. Sheehan, Shea & Gardner, Washington, DC, David T. Anderson, Boston, MA, Dennis J. Kelly, Burns & Levinson, Boston, MA, Hugh M. Ray, James Donnell, Van Oliver, Andrews & Kurth, Dallas, TX, Jeanne P. Darcey, Palmer & Dodge, LLP, Boston, MA, Susan Smith, Santos, Peck & Smith, Hartford, CT, for Ben S. Branch.

STEARNS, District Judge.

On December 17, 2001, the Senior Debt holders of the bankrupt Bank of New England Corporation (BNEC), appealed a November 1, 2001 order of the Bankruptcy Court authorizing a distribution of assets from BNEC's estate to the Junior Debt holders. Appellants maintain that no such distribution can be made before they are paid post-petition interest.

Prior to BNEC's spectacular collapse, it obligated itself to six separate issues of Indenture debt, totaling $705,972,000. Under the terms of the Indentures, the first three issues (the Senior Debt) were to have priority over the remaining three issues (the Junior Debt). Each of the Junior Debt Indentures contains an "Agreement to Subordinate." The Agreement states:

> each Holder likewise covenants and agrees by his acceptance thereof, that the obligations of the Company to make any payment on account of the principal of and interest on each and all of the Notes shall be subordinate and junior, to the extent and in the manner hereinafter set forth, in right of payment to the Company's obligations to the holders of Senior indebtedness of the Company.[1]

The Indentures also specifically acknowledge the priority rights of the Senior Debt holders in the event of bankruptcy.

> The Company agrees that upon ... any payment or distribution of assets of the Company of any kind or character, whether in cash, property or securities,

---

[1] The quoted text is from the Floating Rate note. The other two notes are materially identical.

to creditors upon any dissolution or winding up or total or partial liquidation or reorganization of the Company, whether voluntary or involuntary or in bankruptcy, insolvency, receivership. conservatorship or other proceedings, all principal (and premium, if any) sinking fund payments *and interest due or to become due upon all Senior Indebtedness of the Company shall first be paid in full,* or payment thereof provided for in money or money's worth in accordance with its terms, before any payment is made on account of the principal of or interest on the indebtedness evidence by the [Junior] Notes due and owing at the time . . . .

(Emphasis added). The parties agree that the Senior Debt holders are first in line for the payment of principal and pre-petition interest. The only dispute is over post-petition interest.

BNEC declared bankruptcy in 1991. The Trustee of BNEC's estate, Dr. Ben Branch, having done a truly remarkable job of marshaling BNEC's assets, has paid the principal of the Senior Debt in full, together with all pre-petition interest, post-petition fees, and the Senior Debt holders' expenses.[2] On May 23, 2001, the Trustee sought permission from the Bankruptcy Court to distribute $11,000,000 from BNEC's estate to the Junior Debt holders. The Senior Debt holders objected, claiming priority entitlement to post-petition interest. On November 1, 2001, Chief Bankruptcy Judge William Hillman authorized the distribution. In a written opinion, Judge Hillman held that the language of the Junior Debt Indentures guaranteeing the Senior Debt holders "payment in full" of "interest . . . due and

owing" did not include post-petition interest. This appeal ensued.

■ At the hearing before the district court, the parties agreed that *de novo* review of Judge Hillman's Order is called for as there are no disputes of fact and the operative language of the Indentures is (at least in the eye of the beholder) unambiguous. *See In re Winthrop Old Farm Nurseries, Inc.,* 50 F.3d 72, 73 (1st Cir.1995) (a district court is to review *de novo* a Bankruptcy Court's conclusions of law). If the court were, however, to conclude that Judge Hillman's decision was based on ambiguities in the language of the subordination agreement, the Junior Debt holders maintain that the "clearly erroneous" standard should be applied instead. While

> "[t]he interpretation of a contract is generally a question of law and subject to . . . *de novo* review," *Network Pub. Corp. v. Shapiro,* 895 F.2d 97, 99 (2d Cir.1990), this general proposition applies only when the language of the contracts is unambiguous. *Rothenberg v. Lincoln Farm Camp, Inc.,* 755 F.2d 1017, 1019 (2d Cir.1985). When the language of the contract is susceptible to more than one reasonable interpretation, the interpretation of the contract is an issue of fact.

*In re The Brunswick Hosp. Ctr., Inc.,* 156 B.R. 896, 899 (E.D.N.Y.1993). Because I do not interpret Judge Hillman's decision to be based on any perceived ambiguity in the language of the Indentures, but rather on his legal conclusion that the language used failed to satisfy the Rule of Explicitness, the *de novo* standard of review applies.[3]

---

**2.** The Trustee has also established a reserve to pay any future legal fees and expenses of the Senior Debt holders.

**3.** The Rule of Explicitness "prevents a senior creditor from recovering post-petition interest from junior creditors unless the subordination agreement articulates the obligation in unusually express language." *In re Southeast Bank-*

The genesis of the dispute on appeal arises from the interplay between two seemingly contradictory provisions of the Bankruptcy Code. Under 11 U.S.C. § 502(b)(2), a creditor in a bankruptcy proceeding is not entitled to post-petition interest.

> (b) Except as provided ... the court, after notice and a hearing, shall determine the amount of [a bankruptcy] claim in lawful currency of the United States as of the date of the filing of the petition, ... except to the extent that—...
>
> (2) such claim is for unmatured interest.

Under 11 U.S.C. § 510(a), which was inserted into the Bankruptcy Code by Congress in 1978, "[a] subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable non-bankruptcy law."

The enactment of section 510(a) precipitated a debate over whether Congress had intended to abrogate the equitable foundation on which the Bankruptcy Court had erected the Rule of Explicitness. The origins of the Rule are ably explained in *Southeast Banking I*.

> The overriding theme of bankruptcy law, both past and present, has been the equitable distribution of the debtor's remaining assets among creditors.... The courts, however, have permitted creditors to contract out of this system of pro-rata distribution by enforcing subordination agreements, whereby one creditor (the junior creditor) agrees that, in the event of a default or bankruptcy, another creditor (the senior creditor) will receive repayment in full before the junior creditor receives payment on its loans.... In enforcing subordination agreements, however, the courts have emphasized that the junior creditor's

agreement to subordinate must be express. *See In re Credit Industrial Corp.*, 366 F.2d at 408.

The issue of post-petition interest has led to a wrinkle in the enforcement and interpretation of subordination agreements. Given the often lengthy delay between the debtor's petition for bankruptcy and the date upon which a creditor can expect to receive any payment on the underlying obligation, post-petition interest can represent a significant amount of money. Under both pre-Code practice and the 1978 Bankruptcy Code, unsecured and undersecured creditors could not expect to receive interest on a bankrupt debtor's obligation that accrued after the date of the bankruptcy petition—at least not from an insolvent debtor. *See* 11 U.S.C. § 502(b)(2) (instructing courts to determine the amount of a creditor's claim on the date of the petition and disallowing claims for "unmatured interest").

   .     .     .     .     .

In a number of cases, senior creditors sought to avoid this result and recover post-petition interest—not from the debtor, but from the distributions made to junior creditors subject to subordination agreements. Citing the junior creditors' agreement to subordinate their right to repayment until the senior debt had been paid in full, senior creditors argued that even though bankruptcy law prevented their recovery of post-petition interest from the debtor, their loans had not been paid in full and, therefore, that they could demand payment from whatever distribution the junior creditors received from the debtor. In 1974, before Congress adopted the Bankruptcy Code, the Court of Appeals for the Third Circuit addressed

*ing Corp.*, 156 F.3d 1114, 1118 (11th Cir. 1998) (*Southeast Banking I* ).

this argument and concluded that a junior creditor could agree to subordinate its claim to a senior creditor's demands for post-petition interest, if the subordination agreement *explicitly* provided for such a result:

> "If a creditor desires to establish a right to post-petition interest and a concomitant reduction in the dividends due to subordinated creditors, the agreement should clearly show that the general rule that interest stops on the date of the filing of the petition is to be suspended, at least vis-a-vis these parties."
>
> *In re Time Sales Fin. Corp.*, 491 F.2d 841, 844 (3d Cir.1974).

Significantly, however, the *Time Sales* court held that general language in the subordination agreement, establishing that the senior debt must be "paid in full" before payment on the junior debt, was insufficient to alert the junior creditor that it had agreed to subordinate its claims to the senior creditor's claims for post-petition interest.... A number of courts, when confronted with similar claims and subordination agreements, adopted the Third Circuit's approach and dubbed it the "Rule of Explicitness."

*Id.* at 1118–1120.

Ultimately, the Court in *Southeast Banking I* concluded that the enactment of section 510(a) had indeed abrogated the Rule "as the progeny of the bankruptcy courts' equity powers or as a federal canon of contract construction." *Id.*, 156 F.3d at 1124. To the extent that the Rule survived section 510(a), it do so only as a matter of State law.

> The language of section 510(a) ... directs courts to enforce subordination agreements to the extent that the agreements are enforceable under "applicable nonbankruptcy law." 11 U.S.C. § 510(a). In another context, the Supreme Court has held that Congress's use of the phrase "applicable nonbankruptcy law" in the Bankruptcy Code refers to any relevant federal or state law. *See Patterson v. Shumate*, 504 U.S. 753, 757–759, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) (noting [illegible and missing text] relevant provision of federal legislation, however, the parties before us have identified no independent federal statute that might guide the interpretation of subordination agreements; nor have they argued that federal common law should govern the outcome of this case. This absence of relevant federal authority should not be surprising because the enforcement and "interpretation of private contracts is ordinarily a question of state law.") *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 60 n. 4, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (quoting *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)); *see also Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.").

*Id.* at 1121. (Extended citations and footnote omitted).

The Indenture at issue in *Southeast Banking I*, as here, contained a New York choice of law clause. "Since our review of New York law revealed no intimation of what specific language (if any) the New York courts would require to put a junior creditor on notice regarding the significant risk of subordinating a debt to a senior creditor's claims for post-petition interest

and post-petition fees and costs, we CERTIFIED this important question to the New York Court of Appeals." *Id.*, 156 F.3d at 1125–1126.[4]

The New York Court of Appeals answered as follows: "In accordance with the Rule of Explicitness, New York law would require specific language in a subordination agreement to alert a junior creditor to its assumption of the risk and burden of allowing the payment of a senior creditor's post-petition interest demand." *In the Matter of Southeast Banking Corp.*, 93 N.Y.2d at 186, 688 N.Y.S.2d 484, 710 N.E.2d 1083. This answer led the Eleventh Circuit to reaffirm its prior determination that "we find it beyond question that the subordination language in the indenture agreements in this case, which requires 'payment in full' without any specific reference to post-petition interest, is insufficiently 'precise, explicit and unambiguous' on the topic of post-petition interest to satisfy the Rule of Explicitness." *In re Southeast Banking Corp. II*, 179 F.3d 1307, 1310 (11th Cir.1999).

The Junior Debt holders argue that on the basis of this exchange, it is clear that for a claim to post-petition interest to survive the Rule of Explicitness, a subordination agreement must specifically reference the entitlement of the Senior Debt holders to such interest. I agree.[5] There is nothing ambiguous about the word "explicit." It means "fully and clearly expressed or demonstrated; leaving nothing merely implied." *Random House Unabridged Dictionary; Second Edition* (1993). This is especially the case when one is dealing with a bankruptcy term of art like "post-petition interest," whose meaning would not be apparent to an ordinary investor unschooled in bankruptcy law, much less thought to be comprehended in a terms as general as "payment in full" or "due and owing."[6]

---

**4.** The precise question asked was: "What, if any, language does New York law require in a subordination agreement to alert a junior creditor to its assumption of the risk and burden of the senior creditor's post-petition interest?" *Id.*, 156 F.3d at 1125. One could argue that the question was the wrong one, and that what the Court meant to ask was not how the New York Court of Appeals defined the Rule of Explicitness, but whether it recognized the Rule at all. As the Eleventh Circuit noted earlier in *Southeast Banking I*, the contours of the Rule were well-established. Indeed, given the consensus achieved by the Rule, the Eleventh Circuit wondered "whether the New York courts would disturb the heretofore uniform treatment of this question, particularly given the evidence that the capital markets appear to have adjusted to the Rule of Explicitness." *Id.* at 1124. "Nevertheless," the Court continued, "since this is an important question of first impression for the New York courts, ... we are reluctant to predict its resolution under New York law." *Id.* at 1125. Certainly, the Court of Appeals gave more attention to the second question than it did to the actual question asked by the Eleventh Circuit. The Court of Appeals introduced its discussion with the prefatory remark that "we [now] face up to whether New York should adopt [the Eleventh Circuit's] version of the Rule of Explicitness as a guiding interpretive principle of State contract dispute resolution in cases such as this." *In the Matter of Southeast Banking Corp.*, 93 N.Y. 2d 178, 183, 688 N.Y.S.2d 484, 710 N.E.2d 1083 (1999).

**5.** The Senior Debt holders make a convoluted, clever, and ultimately unconvincing argument that the Court of Appeals never really answered the certified question but simply deferred to the Eleventh Circuit's determination that the language in the subordination agreement at issue (which was virtually identical to the language in this case) failed to satisfy the Rule of Explicitness.

**6.** The Senior Debt holders argue that the phrase "interest due or to become due" can only refer to post-petition interest as it is the only interest that could "become due" after a bankruptcy (because post-petition interest is otherwise disallowed). While the argument is not devoid of logic, it is not explicit, but depends on inferences drawn from the judi-

## ORDER

For the foregoing reasons, the Order of the Bankruptcy Court is *AFFIRMED.*

SO ORDERED.

cial reconciliation of the conflict between sec-tion 502(b)(2) and section 510(a).