**Fred SAUER, Plaintiff–Counter–Defendant–Appellant–Cross–Appellee,**

v.

**XEROX CORPORATION, Defendant-Counter-Claimant-Appellee-Cross-Appellant.**

**Nos. 00–7604, 00–7674.**

United States Court of Appeals, Second Circuit.

March 12, 2001.

---

1. Notably, Ms. O'Connor specifies that she does not wish to be relieved of the settlement agreement of December 1995.

Gordon Locke, Esq., The Law Offices of Gordon Locke, New Rochelle, NY, for plaintiff-appellant Fred Sauer.

E. Marcellus Williamson, Esq., Latham & Watkins, Washington, DC, for defendant-appellee Xerox Corporation.

Present STRAUB, POOLER, and SACK, Circuit Judges.

## SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.

Plaintiff Fred Sauer appeals from a judgement entered August 19, 1998 by the United States District Court for the Western District of New York (David G. Larimer, *Chief Judge*) granting summary judgment to Defendant Xerox Corporation on all of Sauer's claims that had not already been dismissed in earlier proceedings. *See Sauer v. Xerox Corp.*, 17 F.Supp.2d 193 (W.D.N.Y.1998). Xerox cross appeals from a judgement entered on April 26, 2000 dismissing its counterclaims against Sauer. *See Sauer v. Xerox Corp.*, 95 F .Supp.2d 125 (W.D.N.Y.2000). For the following reasons, we affirm.

This suit arises from a sale/lease-back agreement between Xerox and Sauer pursuant to which Xerox sold, then leased back, a photoreceptor line used in the production of photocopiers.[1] The lease-back agreement was for an initial eight year term, beginning in January 1986 and running through December 1993. Xerox then had the right to renew the lease for two additional two year periods (January 1994 to December 1995 and January 1996 to December 1997) and then repurchase the equipment at the end of the renewal terms. The lease set forth *inter alia* a detailed procedure whereby the rental amount for the renewal terms and repurchase price would be determined by an appraisal process that would, if necessary, employ an independent appraiser selected by the American Arbitration Association ("AAA"). Xerox timely exercised its right to renew the lease for both two-year renewal periods and its option to repurchase the equipment, although Sauer now contends that the second renewal and repurchase options were not validly exercised. The parties could not agree on the renewal rent or repurchase price and therefore initiated the appraisal process. In July 1995, after appraisers appointed by the parties could not reach an agreement, an appraiser was appointed by the AAA as set forth in the lease. On September 8, 1995, the AAA appraiser notified the parties of his final determination of the fair market rental value.[2] Xerox thereafter tendered the appraised amounts, with interest.

On July 20, 1995, Sauer initiated this action, principally alleging breach of contract, fraud, and conversion. The suit was filed prior to Sauer providing notice that it considered Xerox in violation of the lease and before the appraisal process was completed. Xerox cross-claimed alleging breach of contract and fraud. After exten-

---

1. The relationship between the parties is actually more complex. Integrated Equipment Leasing Corporation ("Integrated") was the initial purchaser/lessor. Shortly after purchasing the equipment, Integrated sold the equipment to Investors Credit Corporation ("ICC"), which in turn sold the equipment to Sauer in December 1985. Sauer then leased the equipment to Integrated, which leased the equipment to Xerox. Sauer acquired all of Integrated's interests in the lease in 1995.

2. Sauer disputes that these amounts constituted the appraiser's final estimate, which he asserts was contained in a report issued by the appraiser in August 1995.

sive discovery and contentious pretrial proceedings, on August 18, 1998 the District Court dismissed Sauer's claims. In regard to Sauer's breach of contract claims, the court found *inter alia* that because Sauer failed to abide by the notice and cure provisions of the lease, he was precluded from seeking remedies conditioned on those provisions. As to Sauer's fraud claims, the court found *inter alia* that Sauer could not proffer evidence of actual misrepresentations and that for several claims, Xerox had no duty to disclose information. On April 25, 2000, the District Court dismissed Xerox's counterclaims, finding *inter alia* that Xerox suffered no recoverable damages. *See Sauer,* 95 F.Supp.2d at 131, 135. Both parties submitted timely appeals to this court.

We review orders granting summary judgement *de novo,* focusing our inquiry on whether the district court properly concluded that the moving party was entitled to judgment as a matter of law. *See Allstate Ins. Co. v. Mazzola,* 175 F.3d 255, 258 (2d Cir.1999); *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202–03 (2d Cir.1995). To do this, we resolve all ambiguities and factual inferences in favor of the party against whom summary judgment was granted. *See, e.g., Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.,* 182 F.3d 157, 160 (2d Cir.1999). Summary judgement, however, cannot be defeated simply by conclusory allegations. *See Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996). Instead, the non-moving party must come forward with specific facts that create a genuine issue for trial. *See, e.g., West–Fair Elec. Contractors v. Aetna Cas. & Sur. Co.,* 78 F.3d 61, 63 (2d Cir.1996) (per curiam).

Even under this rigorous standard, we concur with the District Court that Xerox was entitled to summary judgment on all of Sauer's claims. When a party to a contract seeks to enforce its provisions, it must abide by the contract's preconditions to bringing suit. *See Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.,* 865 F.2d 513, 518–19 (2d Cir.1989); *Consumers Power Co. v. Nuclear Fuel Servs., Inc.,* 509 F.Supp. 201, 211 (W.D.N.Y.1981). The lease requires that

> [u]pon the occurrence of any Event of Default ... the Lessor may, at its option, declare this Lease to be in default by written notice to such effect given to the Lessee, and at any time thereafter, the Lessor may exercise one or more of the following remedies ... [p]roceed by appropriate court action....

Thus, prior to proceeding with court action, the lessor must declare the lease to be in default by written notice. It is uncontested that Sauer gave no such prior notice.[3] For this reason alone, Sauer's breach of contract claims are deficient. But in addition, the record demonstrates no evidence that Xerox breached the lease by failing to pay renewal rent. When Sauer initiated this action, the amount of rent owed by Xerox was still undetermined, and there is no evidence that this was due to delays by Xerox. Finally, Sauer will be unable to establish damages because Xerox tendered renewal rent, with interest, once the appraisal process was complete.

Sauer claims that Xerox's second renewal of the lease in 1995 was void because Xerox was in default at the time of renewal. According to Sauer, the many breaches committed by Xerox, including

---

3. The record reveals that Integrated (Sauer's predecessor in interest and original lessor of the equipment) was aware of missing or destroyed equipment as early as 1993. Therefore, Sauer should have provided notice that he considered Xerox's failure to pay casualty losses to be a breach.

Xerox's failure to report non-severable improvements and events of loss, made Xerox ineligible to renew the lease. This eleventh hour claim is without merit. Nowhere in any of Sauer's many complaints does he allege that the agreement was void due to non-severable improvements and events of loss. And as pointed out by the District Court, this claim is wholly inconsistent with Sauer's other legal claims and actions, including his acceptance of payments from Xerox and failure to act in a manner consistent with the termination provisions of the lease, all of which demonstrates that he considered the lease to still be in effect. Therefore, Sauer cannot assert now, years later, that the lease expired in 1995. *See, e.g., AM Cosmetics, Inc. v. Solomon,* 67 F.Supp.2d 312, 317 (S.D.N.Y.1999) ("If the injured party chooses not to terminate the contract, he surrenders his right to terminate later based on that breach."); *National Westminster Bank, U.S.A. v. Ross,* 130 B.R. 656, 675 (S.D.N.Y.1991) ("[W]here a party to an agreement has actual knowledge of another party's breach and continues to perform under and accepts the benefits of the contract, such continuing performance constitutes a waiver of the breach."), *aff'd sub nom, Yaeger v. National Westminster,* 962 F.2d 1 (2d Cir.1992).

■ Sauer's four fraud claims were also properly dismissed. To establish a claim for fraud, the following elements must be established: (1) a material misrepresentation or omission for which the party has a duty to disclose; (2) an intent to defraud; (3) reasonable reliance on the representation; and (4) damages as a result. *See, e.g., Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank,* 57 F.3d 146, 153 (2d Cir.1995). Sauer is not able to establish these elements for any of his fraud claims.

First, Sauer claims that Xerox falsely represented to the AAA appraiser that no non-severable improvements were made to the photoreceptor line. Throughout its submissions, however, Sauer fails to identify specific misrepresentations made by Xerox. Because the evidence demonstrates that Xerox fully cooperated with the appraisal process and gave the appraiser full access to inspect the equipment, Sauer's vague allegations are insufficient. After the benefit of extensive discovery, Sauer must come forward with specific facts and evidence that establish a triable issue. *See West–Fair Elec. Contractors,* 78 F.3d at 63. Because he has failed to do this, the claim must fail.

■ Sauer next claims that Xerox fraudulently failed to disclose the existence of a second photoreceptor line to the AAA appraiser. However, Xerox had no duty to disclose this information. The lease clearly shows that the appraisal should be based on "the amount which would be obtainable in an arm's-length transaction between an informed and willing lessee (other than a lessee currently in possession) ...." Thus, the lease required that the appraiser objectively estimate the value of the equipment, and not consider the current resources or needs of Xerox. Because Xerox had no duty to disclose this information, Sauer's fraud claim fails.

Sauer's third fraud claim asserts that Xerox falsely represented to the appraiser that the photoreceptor line's electronic scanner had been taken offline. Sauer, however, is unable to point to specific evidence of false representations made by Xerox. Sauer relies on an inventory list created by the appraiser that listed the scanner as "removed from service." Yet there is no evidence demonstrating that the appraiser was misled by Xerox into making this notation. To the contrary, the record demonstrates that Xerox fully coop-

erated with the appraisal and did not hinder the appraiser's inspection in any way. In fact, the appraiser testified that a Xerox representative told him that the scanner was only partly off-line. This testimony is corroborated by the appraiser's own contemporaneous notes of his conversion with the Xerox representative. The record, therefore, is devoid of any evidence of fraudulent conduct by Xerox in regard to the scanner.

Lastly, Sauer has presented no evidence that alleged misrepresentations concerning the Egan Coater damaged Sauer. As to Sauer's fear of IRS prosecution for misreporting his 1985 tax returns, the statute of limitations for the IRS to seek unpaid taxes has expired. *See* 26 U.S.C. § 6501(a). Moreover, Sauer presents no evidence suggesting that this alleged misrepresentation affected the AAA appraisal of renewal rent or repurchase price. Without damages, Sauer's final fraud claim must also be rejected.

█ Xerox's counterclaims seeking litigation costs were also properly dismissed by the District Court. Xerox claimed that Sauer's suit was brought in bad faith and in violation of an express covenant not to sue. According to Xerox, the appraisal provision of the lease created a covenant not to sue because it made the appraisal "binding and conclusive." Xerox also claims that the remedies provision created a covenant not to sue by requiring notice and opportunity to cure prior to suit. Because Sauer's suit was in direct violation of these covenants and brought in bad faith, Xerox contends that an award of attorneys' fees is warranted. This argument fails because neither the remedies provision nor the appraisal provision of the lease constitutes a covenant not to sue. Under New York law, attorneys' fees are not recoverable by the prevailing party unless such an award is authorized by the

agreement. *See American Motorists Ins. Co. v. Trans Int'l Corp.*, 265 A.D.2d 280, 281, 696 N.Y.S.2d 186 (2d Dep't 1999). Here, no such authorization is provided by the lease. There is no affirmative indication that violation of this provision of the lease gives rise to an independent cause of action for attorney's fees. *See Artvale Inc. v. Rugby Fabrics Corp.*, 363 F.2d 1002, 1004, 1008 (2d Cir.1966) (holding that a suit brought in violation of a contract provision stating that "Artvale agrees not to bring suit ..." did not give rise to an award of attorneys' fees). Moreover, although ultimately adjudged to be without merit, Sauer's suit cannot be fairly characterized as "entirely without color and [undertaken] for reasons of harassment or delay or for other improper purposes." *Dow Chem. Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir.1986) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 80 (2d Cir.1982)). Therefore, because Sauer's suit was not brought in bad faith or in direct violation of a covenant not to sue, attorneys' fees were properly denied.

We have examined the remaining claims of both parties and find them to be without merit. Therefore, we AFFIRM the judgment of the District Court.