ROSA ROSARIO, Respondent, v GENERAL MOTORS CORPORATION et al., Appellants, and LUIS ALVERNIA, Respondent.

LUIS ALVERNIA, Plaintiff, v GENERAL MOTORS CORPORATION et al., Defendants.

First Department, June 27, 1989

## APPEARANCES OF COUNSEL

*Herbert Rubin* of counsel *(David B. Hamm* with him on the brief; *Herzeld & Rubin, P. C.,* attorneys), for appellants.

*Gary A. Lichtman* of counsel *(Raymond B. Schwartzberg & Associates,* attorneys), for respondent.

## OPINION OF THE COURT

WALLACH, J.

This appeal calls for us to reconsider the circumstances under which a party is entitled to disclosure from an adverse party's expert witness. We hold that when material physical evidence is inspected by an expert for one side, and then lost or destroyed before the other side has had an opportunity to conduct its own expert inspection, a special circumstance exists within the meaning of CPLR 3101 (d) (1) (iii) that per se warrants disclosure directly from the expert concerning the facts surrounding his inspection.

Plaintiff was a passenger in an automobile manufactured by defendant that went out of control and collided with a guardrail and tree along the roadway, causing her personal injury. Within two weeks after the accident, she had the automobile inspected by an engineer, who, in a written report produced under a prior court order, concluded that a defective "outer bearing" in the "left front wheel assembly" was the cause of an "excessive amount of play" he had detected in the steering

system, and could have caused the vehicle to "drift from side to side under normal operating conditions". Under circumstances and for reasons that neither plaintiff nor the owner and driver of the automobile, a codefendant in the action (and also plaintiff's husband), cannot or will not explain, the automobile and its allegedly defective parts were lost or destroyed, and so are not available for inspection and testing by defendant manufacturer. Thus, the best defendant can do by way of a defense is impugn the reliability of the inspection and tests performed by plaintiff's expert, and otherwise impeach the testimony he can be expected to give at trial. Contending that it cannot adequately prepare such a defense with only the expert's report in hand, which it describes as sketchy, confusing, conclusory and slanted, and also pointing out that the expert is the best and probably only witness with detailed, first-hand knowledge of the condition of the automobile after the accident, defendant sought to take his deposition.

Of particular interest to defendant is the impact damage to the left front and tire of the vehicle observed by the expert but not described in his report; since that damage was observed in the same general area as the alleged defect in the wheel assembly, defendant thinks it quite possible that the so-called defect was the result of the accident and not its cause. To ascertain as much, defendant would depose the expert as to his "factual observations" relating to the extent of this damage, it being defendant's stated intention not to probe into the expert's "opinions". Also of concern to defendant but omitted from the report are a description of the tests conducted on the vehicle, the tools and devices used in the inspection and testing, the precise measurements taken with those tools and devices, the duration of the inspection and the conditions under which the testing took place, the expert's observations during the testing, and the meaning of certain technical terms used in the report.

At first, in a preliminary conference order, IAS directed plaintiff to produce the expert for a deposition as to his "observations and acts, not his expert opinion", but, upon plaintiff's motion to reargue, which relied heavily on our recently decided Calo v Ahearn (135 AD2d 457), IAS reversed itself on the ground that since "[t]he report fully details the [expert's] inspection of the vehicle", defendant failed to show "special circumstances" within the meaning of CPLR 3101 (d) (1) (iii) such as would warrant disclosure concerning the expert's expected testimony at trial beyond production of his

report. Only attorneys' affidavits were submitted on the motion.

It is implicit in IAS's ruling that had full details of the inspection not been supplied in the expert's report, further disclosure concerning his expected testimony at trial would have been directed. The decision, in other words, appears to have turned on whether another expert could, on the basis of the data supplied in the report, formulate his own opinion as to whether the accident was caused by a defect in the automobile. Whether an expert's report is inadequate to permit the formulation of an opinion by another expert is, we think, a finding essentially factual in nature that requires, at the least, an affidavit from that other expert explaining the inadequacies of the report. Such an affidavit would likely elicit a responsive affidavit defending the report from the expert who prepared it, thus engaging the court in a battle of experts involving questions of science and its methodology which, if they must be addressed at all, are better left alone by the court until framed by the answers given to an advocate's specific questions. We think it much preferable simply to say that the destruction of physical evidence after its inspection by an expert for one side but before its inspection by an expert for the other is per se a special circumstance justifying disclosure directly from the expert concerning his factual observations, and that, given such a circumstance, disclosure directly from the expert is not to be denied on the ground that his factual observations are already adequately set forth in his written report, if any, to the litigant who hired him.

Prior to the 1985 amendments to CPLR 3101 (d) (L 1985, ch 294, § 4), the opinions and work product of an expert, like anything else created by or for a party or his agent in preparation for litigation, were exempt from disclosure unless, as the statute put it, the court found that "the material can no longer be duplicated because of a change in conditions and that withholding it will result in injustice or undue hardship". Case law uniformly recognized the destruction of physical evidence after its inspection by an expert for only one side to be an undue hardship on the other side justifying some degree of disclosure concerning the expert's work and/or opinions, the only question being, and here the case law was not at all uniform, how much disclosure and in what form (see, cases collected in 3A Weinstein-Korn-Miller, NY Civ Prac ¶ 3101.52, nn 533-536). In most cases, production of the written report prepared by the expert for the litigant who hired

him was directed, albeit usually redacted to delete the expert's "opinions" on the ground that it was only his "factual observations" that could no longer be duplicated because of changed conditions in or destruction of the article inspected *(e.g., Calo v Ahearn,* 135 AD2d 457 [1st Dept], *supra; see also, Miller v Haug Co.,* 96 AD2d 790 [1st Dept]; *Sucrest Corp. v Fisher Governor Co.,* 36 AD2d 702 [1st Dept]; *American Home Prods. Corp. v National Carloading Corp.,* 36 AD2d 934 [1st Dept]). In other cases, the expert's deposition was directed in addition to the production of his report, albeit again usually limited to his "factual observations" as opposed to his "opinions" *(e.g., Cepin v Cepin,* 66 AD2d 764 [2d Dept]; *see also, RPM, Inc. v Pentagon Chem. & Paint Works,* 114 AD2d 1025 [2d Dept]; *Morrison v Ellis,* 91 AD2d 1172 [4th Dept]; *Brandes v Pettibone, Inc.,* 62 AD2d 1133 [4th Dept]). Yet other cases shied away from ordering a deposition, limiting the seeking party instead to interrogatories on the ground that interrogatories could be supervised more effectively to assure against "irremediable incursions" into the expert's "opinions" *(e.g., Coley v Michelin Tire Corp.,* 75 AD2d 610 [2d Dept]; *see also, Miracolo v Mercedes-Benz of N. Am.,* 91 AD2d 679 [2d Dept]). It is not readily apparent from a review of the cases why disclosure concerning the expert's work beyond production of his report was directed in some cases and not in others, although the rationale does seem implicit that any hardship caused by the unavailability of the article inspected could be obviated by the production of a high-quality report supplying full details of the expert's factual observations. The bright line test we now apply should, if nothing else, eliminate differences in result attributable to cases being decided on the basis of a court's evaluation of the quantity and quality of the information contained in an expert's report prepared for purposes of litigation.

As *Calo (supra)* demonstrates, this court has in the past been reluctant, more so than other courts, to direct disclosure concerning the expected testimony of an expert beyond production of his report. We are now more amenable to such disclosure in part because of the "clear legislative policy in favor of liberality" indicated by the recent amendments to CPLR 3101 (d) (3A Weinstein-Korn-Miller, NY Civ Prac ¶ 3101.36, *see also,* ¶¶ 3101.49a, 3101.52a). One of these amendments, codified under CPLR 3101 (d) (1) (iii), provides that "[f]urther disclosure concerning the expected testimony of any expert [i.e., beyond the summary now disclosable upon

notice under CPLR 3101 (d) (1) (i)] may be obtained only by court order upon a showing of special circumstances". "Special circumstances" is a phrase that was used in CPLR 3101 (a) (4) prior to the amendments as the standard for permitting disclosure from a nonparty witness. For this reason, it has been suggested that disclosure from an expert should be virtually as available now as it was from a nonparty witness before the amendments (see, Siegel, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, 1989 Supp Pamph, CPLR C3101:29, at 16)—which is to say that it should be available practically for the asking (see, *Villano v Conde Nast Publs.*, 46 AD2d 118, 120 [1st Dept]; *Slabakis v Drizin,* 107 AD2d 45 [1st Dept]; *Wiseman v American Motors Sales Corp.,* 103 AD2d 230, 240 [2d Dept] [all four Appellate Divisions have adopted the view that the special circumstances requirement is no more than a "nominal" barrier to disclosure, and that a nonparty witness should be directed to a deposition upon a "mere showing" that such is needed to prepare fully for trial]). While it is certainly true that in many respects the effect of the amendments has been to liberalize disclosure concerning an expert's expected testimony, we stop short of characterizing special circumstances as nothing more than a nominal barrier to disclosure from the expert himself. We hold only that if the unavailability of physical evidence after its inspection by an expert for only one side was not, under the old statute, in every instance a "hardship" so "undue" as to warrant disclosure directly from the expert himself, it is, under the new statute, in every instance a "special circumstance" that does warrant disclosure from the expert himself, his opinions excepted.

The distinction between an expert's opinions, on the one hand, and the facts he relies on and materials he creates and compiles in reaching those opinions, on the other, while difficult to grasp in the abstract, has been carried forward in the new CPLR 3101 (d) and must continue to be respected (see, *Dunning v Shell Oil Co.,* 57 AD2d 16 [3d Dept]). If, in order to do so, it is necessary to limit disclosure to interrogatories and refuse a deposition, the trial court should manage the case along those lines or any others it deems appropriate to protect the expert's opinions. We direct a deposition here only because the expert's report has been produced in unredacted form, with the result that his opinions have already been divulged. We do not mean to suggest that a deposition is to be the preferred disclosure device in every case.

Any disagreements over who should pay the expert's fee for attending the deposition should be submitted to the trial court for resolution.

■ On another aspect of the appeal, we affirm that part of IAS's order granting plaintiff a protective order against a notice requesting her to admit that the only defect she asserts and relies on is that to the "left front wheel assembly" identified in her expert's report and reiterated in her answers to defendant's interrogatories. Defendant explains that it seeks such admissions in order to "narrow the issues" by "obtain[ing] confirmation that plaintiff will not allege new claims of defect at trial", and thereby defendant hopes to "prevent surprise and prejudice at trial". Such a purpose, however, is served not by a notice to admit, which, like the various other disclosure devices, serves the different purpose of obtaining evidence, but by a bill of particulars *(see, State of New York v Horsemen's Benevolent & Protective Assn.,* 34 AD2d 769; *see also,* Siegel, Practice Commentary, McKinney's Cons Laws of NY, Book 7B, CPLR C3041:2, at 622-623; 3 Weinstein-Korn-Miller, NY Civ Prac ¶¶ 3041.03, 3041.07). It is often said that a notice to admit should not be used in lieu of other disclosure devices more suitable to obtaining evidence concerning matters of fact that are not easily provable *(Berg v Flower Fifth Ave. Hosp.,* 102 AD2d 760); neither should a notice to admit be used in lieu of a bill of particulars, the device suitable to learning what an opponent's contentions are *(see,* 3A Weinstein-Korn-Miller, *op. cit.,* ¶ 3123.05).

Accordingly, the order of the Supreme Court, New York County (Edward J. Greenfield, J.), entered September 12, 1988, which, *inter alia,* granted plaintiff's motion for reargument of so much of a previous preliminary conference order as directed a deposition of plaintiff's expert concerning his factual observations only, and, upon reargument, struck such directive, should be modified, on the law, the facts and in the exercise of discretion, to restore such directive, and otherwise affirmed, without costs. The appeal from the order of the same court, entered December 20, 1988, which denied defendant's motion for renewal and reargument of so much of the order entered September 12, 1988 as denied a deposition of plaintiff's expert, should be dismissed as academic, without costs.

Sullivan, J. P., Kassal, Rosenberger and Rubin, JJ., concur.

Order, Supreme Court, New York County, entered on Sep-

tember 12, 1988, unanimously modified, on the law, the facts and in the exercise of discretion, to restore the direction to depose plaintiff's expert, and otherwise affirmed, and the appeal from the order entered on December 20, 1988, dismissed as academic, both without costs and without disbursements.