**NAS ELECTRONICS, INC., Jerry Choe and Pil Yon Choe Plaintiffs**

v.

**TRANSTECH ELECTRONICS PTE LTD., and NAS–Transtech Technology Ltd., Defendants.**

**No. 01 CIV. 2810(JGK).**

United States District Court,
S.D. New York.

May 5, 2003.

Paul W. Siegert, Jung & Siegert, New York City, for Plaintiffs.

Gary D. Sesser, Carter, Ledyard & Milburn, New York City, for Defendants.

## OPINION AND ORDER

KOELTL, District Judge.

This action was originally brought in New York State Supreme Court, New York County by NAS Electronics, Inc. ("NAS Electronics"), Jerry Choe, and Pil Yon Choe, (collectively "the plaintiffs") and raised five causes of action, including fraud, breach of contract, tortious interference, slander and a cause of action for a preliminary injunction against Transtech Electronics Pte Ltd. ("Transtech"), NAS–Transtech Technology Ltd. ("NAS–Transtech"), and four individual defendants, Isao Kakimoto, Pauline Chen, Tan Kim Heng and C.C. Tang. Through this lawsuit, the plaintiffs sought to prevent the defendants from enforcing a judgment, entered pursuant to a settlement agreement in a case previously before this Court involving the same parties, against certain real property owned by the plaintiff Jerry Choe in Ulster County, New York. After the New York State Supreme Court declined to prevent the sale of the real property at issue, all the defendants removed the action to this Court. The claims against the individual defendants were dismissed, and discovery was completed. Transtech and NAS–Transtech (collectively "the defendants") have now moved for summary judgment on the plaintiffs' claims of fraud and breach of contract, and have moved to dismiss the remaining claims for tortious interference, slander, and for a preliminary injunction. The plaintiffs have cross moved for various relief and seek the following: partial summary judgment on the breach of contract claim, an additional opportunity to amend the complaint, and additional time to conduct further discovery.

## I.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The substantive law governing the case will identify those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994). If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993); *see also Scotto v. Almenas,* 143 F.3d 105, 114–15 (2d Cir. 1998) (collecting cases).

The defendants filed a statement of undisputed facts as required by Local Civil Rule 56.1(a) but the plaintiffs filed no statement admitting or denying any of the facts the defendants set forth as being undisputed, as required by Local Civil Rule 56.1(b). The plaintiffs also failed to file a statement of undisputed facts in support of their motion for partial summary judgment. The plaintiffs' failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed. *See* Local Civil Rule 56.1(c); *Gubitosi v. Kapica,* 154 F.3d 30, 31 n. 1 (2d Cir.1998); *United States v. All Right, Title and Interest in Real Property and Appurtenances,* 77 F.3d 648, 657–58 (2d Cir.1996); *John Street Leasehold, LLC v. Capital Mgmt. Res., L.P.,* 154 F.Supp.2d 527, 534 (S.D.N.Y.2001), *aff'd,* 283 F.3d 73 (2d Cir.2002).

Therefore, the facts contained in the defendants' Rule 56.1 statement, and the relevant history of the earlier case previously before this Court, which are the

basis for the dispute in the present action, are as follows.

In February 1998, Transtech and NAS–Transtech commenced an action in this Court, *Transtech Electronics Pte Ltd. et al., v. NAS Electronics,* 98 Civ. 1209, against NAS Electronics, Jerry Choe and Alentino, Ltd., seeking to recover damages in excess of $3.2 million for goods sold and delivered to NAS Electronics and seeking to compel NAS Electronics to transfer to NAS–Transtech certain patent rights to a wireless karaoke microphone, known as the Leadsinger. (Settlement Agreement attached as exh. B. to Aff. of Gary D. Sesser ("Sesser Aff") sworn to Nov. 7, 2002 ¶ 4.) In October 1988, Transtech and NAS–Transtech amended their complaint, adding additional defendants and additional claims. (Settlement Agreement ¶ 5.) With the knowledge that the assets of NAS Electronics had been sold to Eok Cho Industrial Metal Co. Ltd of Korea ("Eok Cho"), Transtech and NAS–Transtech commenced a fraudulent conveyance action in New York State Supreme Court, New York County to set aside the transfer of assets from NAS Electronics to Eok Cho. (*See* Settlement Agreement ¶ 6.)

On August 24, 1999, the parties entered into a Settlement Agreement resolving the federal and state actions and an additional action in Singapore. (Settlement Agreement ¶ 1.). The Settlement Agreement provided that Jerry Choe would pay NAS–Transtech $800,000 over a period of five years. (Settlement Agreement ¶ III; Defts.' Rule 56.1 Stmt. ¶ 4.) The payment schedule for this payment required that a payment of $50,000 be made by October 27, 1999, and that periodic payments, increasing over time, would be made until April 27, 2004. (Payment Schedule attached as Exh. 2 to Settlement Agreement; Defts.' Rule 56.1 Stmt. ¶ 4.) The Settlement Agreement also provided that within 90 days of the settlement, Jerry Choe, NAS Electronics and Pil Yon Choe would assign to NAS–Transtech ten patents relating to Leadsinger. (Settlement Agreement ¶ 1; List of Patents attached as exh. 1 to Settlement Agreement; Defts.' Rule 56.1 Stmt. ¶ 5.) Transtech and NAS–Transtech were required to dismiss with prejudice the New York State litigation relating to the alleged fraudulent conveyance and the Singapore litigation. The federal action was to be dismissed without prejudice and subject to reopening. (Settlement Agreement ¶ IX.) Additionally, Transtech, NAS–Transtech, Pauline Chen, Isao Kakimoto, Tan Kim Heng a/k/a Alan Tan, and C.C. Tang were given the "exclusive right to market and sell Leadsinger products" in various countries, including the Asian portion of Russia. (Settlement Agreement ¶ V.)

The Settlement Agreement further provided that should any payment due not be made in a timely manner, with the default uncorrected for a period of seven days, or should the enumerated Leadsinger patents not be assigned or transferred within 90 days of the date of the Settlement Agreement, judgment could be entered by this Court against Jerry Choe, Pil Yong Choe, and NAS Electronics and in favor of NAS–Transtech and Transtech in the amount of $3,200,000. (Settlement Agreement ¶ IV.) The Settlement Agreement is governed by and is to be construed in accordance with the substantive laws of the State of New York. (Settlement Agreement ¶ X.)

By Opinion and Order dated April 12, 2000, this Court found that the two events entitling Transtech and NAS–Transtech to Judgement in the amount of $3,200,000 had occurred, because there had been a failure by Jerry Choe, NAS Electronics or Pil Yong Choe to transfer the Leadsinger patent rights or make timely payment. *See Transtech Electronics Pte Ltd. v. NAS Electronics, Inc.,* No. 98 Civ. 1209, 2000

WL 381428, at *2 (S.D.N.Y. Apr. 13, 2000); (*See also* Defts.' Rule 56.1 Stmt. ¶ 6.) Jerry Choe, Pil Yong Choe, and NAS Electronics made various arguments seeking to prevent the entry of judgment, including a contention that the Settlement Agreement should not be enforced because NAS–Transtech and Transtech had failed to meet their obligations, by interfering with the rights of Jerry Choe, Pil Yong Choe and NAS Electronics to sell the Leadsinger in Western Russia. The Court found that this argument was without merit and not a basis to avoid the terms of the Settlement Agreement, because the provision of the agreement providing for the entry of Judgment was not tied to the other provisions in the Settlement Agreement and was conditioned only upon the occurrence of one of the two events constituting default. *Id.* at *3. The Court also rejected the argument that any alleged interference with the rights to sell Leadsinger in Western Russia constituted actionable fraud, or that those allegations of fraud were sufficient to avoid the entry of judgment. *Id.* at *5. Those allegations, at most, amounted to an alleged breach of contract claim, which had not been raised, and in any event, would also not be sufficient to prevent the entry of judgment. *Id.* The Court then entered Judgment in the amount of $3,200,000 against Jerry Choe, Pil Yong Choe and NAS Electronics on April 12, 2000. *Id.* No appeal was filed from this Judgment.

Several months after the entry of judgment, Jerry Choe, Pil Yong Choe, and NAS Electronics filed a motion pursuant to Fed.R.Civ.P. 60(b) to set aside the Judgment entered on April 12, 2000 and raised the same arguments that had been raised in opposition to the motion by Transtech and NAS–Transtech to enter Judgment. The Rule 60(b) motion was denied. (See Tr. dated Aug. 11, 2000 at 17; Order dated Aug. 11, 2000.) The Court again found that the "allegations that [Transtech and NAS–Transtech] have not complied with their obligations under the [Settlement] agreement do not provide a basis for avoiding an entry of judgment where the parties' unambiguous intent in the settlement agreement was that judgment would be automatically entered upon a default …" (Tr. at 15.) In addition, the Court found that the allegations of alleged non-compliance with § V of the Settlement Agreement "do not state a separate claim for fraud because [Jerry Choe, Pil Yong Choe, and NAS Electronics] have available to them any appropriate remedy for breach of contract." (*Id.*) No appeal was filed from the denial of the Rule 60(b) motion. As a result of these proceedings, the plaintiffs owe the defendants $3,200,000 plus interest. (Defts.' Rule 56.1 Stmt. ¶ 1.)

Subsequent to this Court's hearing on August 11, 2000, Jerry Choe, Pil Yong Choe and NAS Electronics filed the current action on January 8, 2001 in New York State Supreme Court, New York County, alleging five causes of action. The plaintiffs' first cause of action alleged that the defendants committed fraud with respect to § V of the Settlement Agreement, by agreeing to permit the plaintiffs to sell Leadsinger, in European Russia, although they had no intention of carrying out any of those provisions and even though the defendants knew that entering into such an agreement would induce the plaintiffs to agree to the default provisions in § IV of the Settlement Agreement. (Compl.¶ 29.) The plaintiffs also alleged causes of action for breach of contract, tortious interference, slander and for a preliminary injunction.

In connection with the New York state lawsuit, the plaintiffs then filed an order to show cause to stay the sale of property owned by Jerry Choe in Ulster County, New York. (Order to Show Cause attached

as exh. H to Sesser Aff.) New York State Supreme Court Justice Kapnick denied the plaintiffs' request, finding that the relief requested amounted to an attempt to prevent the defendants from collecting the $3,200,000 federal judgment, and finding that the New York State Supreme Court, New York County, lacked jurisdiction to stay the sale of property in Ulster County. (Tr. dated Jan. 19, 2001 at 12–13.) The Judgment of $3,200,000 remains unsatisfied, with the exception of the execution on the property owned by Jerry Choe whose value is less than $50,000. (Defts.' Rule 56.1 Stmt. ¶ 2.)

The defendants removed the case to this Court on April 3, 2001, on the basis of the complete diversity of citizenship among the parties—the plaintiffs being citizens of New York or New Jersey and the defendants being non-citizens. With the consent of the plaintiffs, the Complaint was dismissed without prejudice against all the individual defendants, leaving Transtech and NAS–Transtech as the remaining defendants. The deadline for discovery having passed, the defendants timely filed a motion for summary judgment. The plaintiffs filed a cross-motion seeking partial summary judgment and other relief.

The defendants have moved for judgment on all of the plaintiffs' claims, arguing, among other things, that the claim for fraud is barred by the doctrines of collateral estoppel and res judicata, that the plaintiffs may not allege a breach of contract claim because they themselves breached the terms of the Settlement Agreement, and that the remaining claims should be dismissed because the Complaint fails to state a claim for tortious interference, slander, or a preliminary injunction. The plaintiffs cross moved for summary judgment on the breach of contract claim, and also seek leave to file an amended complaint and additional time to conduct additional discovery.

## II.

### A.

The defendants argue that summary judgment is appropriate on the plaintiffs' first cause of action for fraud on the grounds that the claim is barred by the doctrines of res judicata and collateral estoppel.

On April 12, 2000 Judgment in this case was entered against Jerry Choe, Pil Yong Choe and NAS Electronics in the amount of $3,200,000. *Transtech Electronics*, 2000 WL 381428, at *5. The Rule 60(b) motion to vacate the judgment was denied. (Tr. at dated Aug. 11, 2000 at 17.) During the course of entering the Judgment against the plaintiffs, and during the denial of the Rule 60(b) motion, the Court addressed and rejected the fraud allegations now being raised by the plaintiffs in their first cause of action. The plaintiffs claimed then, as they do now, that the defendants interfered with the plaintiffs' rights to sell the Leadsinger in Western Russia, as provided for in § V of the Settlement Agreement, and that the defendants only agreed to provide those rights as a means fraudulently to induce the plaintiffs to agree to the other terms of the Settlement Agreement. The Court found in its previous Opinion and Order that

> There is nothing about the . . . allegations with respect to the . . . activities in Western Russia which raises any alleged misrepresentation or fraudulent conduct going beyond what is contained in this provision of the agreement. The [plaintiffs] simply allege that the [defendants] have breached their obligations under the Settlement Agreement and, if true, they can sue for breach of contract. Adding an allegation that the [defendants] did not intend to perform their obligations under the Settlement Agreement does not state a separate claim of fraud . . . . The [plaintiffs] point to no

violation of any other legal duty separate from the contract or any damages not recoverable in an action for breach of contract.

*Transtech Electronics,* 2000 WL 381428, at *5. The defendants argue that given this prior ruling, the plaintiffs' present cause of action for fraud is barred both by the doctrines of res judicata and collateral estoppel.

Whether the judgment and orders from the prior litigation have preclusive effect in the present case is to be determined by New York law, rather than by federal law. In *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001), the Supreme Court held that when a federal court sitting in diversity applies state substantive law as the rule of decision in a case, the preclusive effect of any decision by the federal court in that case is to be determined by the state preclusion law of the state in which the district court sits. *Id.* at 508–09, 121 S.Ct. 1021. The Supreme Court reasoned that a federal rule requiring the application of state preclusion law to determine the preclusive effects of federal judgments based on state law would best result in uniform results, whether the subsequent litigation in which preclusion is sought was brought in federal or state court. *See id.* Although *Semtek* involved a state court determining the preclusive effect of a federal decision in a diversity case, the rule announced in *Semtek* applies to the situation in this case, where the preclusive effect of a federal decision in a diversity case is being litigated in federal court. This is true because the rule announced by the Supreme Court was a rule of federal law adopting state law which would be applied in any court where the preclusive effect of the federal judgment in a diversity case is sought to be litigated. Consequently, this Court is obligated to follow New York preclusion law in determining what preclu-

sive effect, if any, the prior decision in *Transtech Electronics* will have.

■ Under New York law, "[c]ollateral estoppel or issue preclusion 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party [or those in privity,] whether or not the tribunals or causes of action are the same.'" *Sullivan v. Gagnier,* 225 F.3d 161, 166 (2d Cir.2000) (quoting *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 478 N.Y.S.2d 823, 467 N.E.2d 487, 490 (1984)); *see also Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1457 (2d Cir.1995). Whether an issue decided in a prior proceeding has preclusive effect "depends on the specific facts and circumstances of each case." *Sullivan,* 225 F.3d at 166.

■ Collateral estoppel applies only " 'if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action.'" *Id.* (quoting *Parker v. Blauvelt Volunteer Fire Co.,* 93 N.Y.2d 343, 690 N.Y.S.2d 478, 712 N.E.2d 647, 651 (1999)); *see also Khandhar v. Elfenbein,* 943 F.2d 244, 247 (2d Cir.1991); *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 492 N.Y.S.2d 584, 482 N.E.2d 63, 67 (1985). In addition, the issue must be decisive and conclusive in the subsequent action. *See Wight v. Bankamerica Corp.,* 219 F.3d 79, 86 (2d Cir.2000); *D'Arata v. New York Central Mutual Fire Ins. Co.,* 76 N.Y.2d 659, 563 N.Y.S.2d 24, 564 N.E.2d 634, 636 (1990); *Ryan,* 62 N.Y.2d 494, 478 N.Y.S.2d at 836, 467 N.E.2d at 500–01.

■ The party seeking the benefit of collateral estoppel bears the burden of demonstrating the identity of issues and the necessity of their having been decided, and the opponent of preclusion has the

burden of proving the absence of a full and fair opportunity to litigate the issue in the prior proceeding. *See In re Sokol,* 113 F.3d 303, 306 (2d Cir.1997); *Jackson v. Ramundo,* No. 95 Civ. 5832, 1997 WL 678167, at *4 (S.D.N.Y. Oct. 30, 1997); *Parker,* 690 N.Y.S.2d 478, 712 N.E.2d at 651; *Kaufman,* 492 N.Y.S.2d 584, 482 N.E.2d at 67. "The doctrine of collateral estoppel 'is grounded on concepts of fairness and should not be rigidly or mechanically applied.'" *Sokol,* 113 F.3d at 306 (quoting *D'Arata,* 564 N.E.2d at 636); *see also People v. Roselle,* 84 N.Y.2d 350, 618 N.Y.S.2d 753, 643 N.E.2d 72, 75 (1994); *United States Fidelity & Guaranty Co. v. Petroleo Brasileiro S.A.—Petrobras,* No. 98 Civ. 3099, 2001 WL 300735, at *12 (S.D.N.Y. Mar. 27, 2001).

■ The plaintiffs' claim of fraud is barred by collateral estoppel because the issue of whether any alleged breach of the Settlement Agreement or any intent not to comply with the terms of the Settlement Agreement can form the basis of a claim of fraud under New York law was the identical issue raised in the prior litigation, and the disposition of that issue was necessary and material to the Court's determination that the default provisions entitling the defendants to $3,200,000 should be enforced. The Court found that there was no basis to assert a fraud claim, and at most, the plaintiffs could sue for breach of contract. The plaintiffs may not now relitigate the determination that there was no viable fraud claim.

■ Similarly, the plaintiffs' cause of action for fraud is barred by res judicata. Under New York law, the transactional approach to res judicata prevents parties to the prior action or those in privity with them "from raising in a subsequent proceeding any claim they could have raised in the prior one, where all of the claims arise from the same underlying transaction." *Schulz v. Williams,* 44 F.3d 48, 53

(2d Cir.1994)(citing *Reilly v. Reid,* 45 N.Y.2d 24, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978)); *accord Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 97 (2d Cir.1997); *Ferris v. Cuevas,* 118 F.3d 122, 126 (2d Cir.1997) (collecting New York cases); *Brooks v. Giuliani,* 84 F.3d 1454, 1463 (2d Cir.1996)(citing *O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 445 N.Y.S.2d 687, 429 N.E.2d 1158, 1159 (1981)); *Hennessy v. Cement & Concrete Worker's Union Local 18A,* 963 F.Supp. 334, 338 (S.D.N.Y.1997); *Parker,* 690 N.Y.S.2d 478, 712 N.E.2d at 649–50; *Smith v. Russell Sage College,* 54 N.Y.2d 185, 445 N.Y.S.2d 68, 429 N.E.2d 746, 749 (1981). Under New York law, "[t]he policy against relitigation of adjudicated disputes is strong enough generally to bar a second action even where further investigation of the law or facts indicates that the controversy has been erroneously decided, whether due to oversight by the parties or error by the courts." *Reilly,* 407 N.Y.S.2d 645, 379 N.E.2d at 175; *McDonough v. City of New York,* No. 99 Civ. 12307, 2000 WL 1804137, at *5 (S.D.N.Y. Dec. 8, 2000).

■ The doctrine of res judicata prevents the plaintiffs from now raising, in a new lawsuit, a claim for fraud, because that is a cause of action that itself arose out the claims brought in the prior lawsuit in which final judgment was entered. The allegation of fraud in the Complaint is virtually identical to the allegation of fraud in the previous lawsuit. Although there was no counterclaim for fraud made in the prior action, and although the fraud allegations only arose as a defense to the attempted enforcement of the judgment of default, the plaintiffs are still not permitted to raise a claim of fraud in a new lawsuit when the allegations of fraud, and the facts underlying such a claim, were clearly present and adjudicated in the prior lawsuit. Res judicata can apply to a

defense that was or could have been raised in a prior proceeding. *See, e.g., Beckford v. Citibank, N.A.,* No. 00 Civ. 205, 2000 WL 1585684, at *3 (S.D.N.Y. Oct. 24, 2000); *Santiago v. Lalani,* 256 A.D.2d 397, 681 N.Y.S.2d 577, 578 (2d Dep't 1998); *see also Pantoja v. Kiska Construction Corp.,* No. 96 Civ. 8593, 2001 WL 1313358, at *7 (S.D.N.Y. Oct. 26, 2001) (finding claim in subsequent lawsuit to be barred by res judicata, although claim only arose as a defense in prior litigation).

The plaintiffs could have appealed the prior federal judgment against them including the denial of the Rule 60(b) motion to vacate the judgment based on alleged fraud. *See, e.g., Malik v. McGinnis,* 293 F.3d 559, 561 (2d Cir.2002); *Manning v. New York University,* 299 F.3d 156, 162 (2d Cir.2002) (per curiam). Having failed to do so, that judgment is now final and precludes the plaintiffs from raising in this action the claim of fraud that could have been and indeed was raised in the prior lawsuit.

The plaintiffs claim for fraud is therefore dismissed, because it is barred by both the doctrines of collateral estoppel and res judicata.

**B.**

The defendants have moved for summary judgment on the plaintiffs' claim for breach of contract. The plaintiffs claim that the defendants breached their obligations under § V of the Settlement Agreement by interfering with the exclusive rights of the plaintiffs, including Jerry Choe, to sell the Leadsinger in the European portion of Russia. The defendants argue that because the plaintiffs failed to live up to their obligations under other provisions of the Settlement Agreement, including the making of timely payments and the transfer of enumerated patent rights, the defendants were no longer bound by the other terms of the Settlement Agreement, and therefore, cannot be held liable for any alleged breaches.

 Under New York law, when one party has committed a material breach of a contract, the non-breaching party is discharged from performing any further obligations under the contract, and the non-breaching party may elect to terminate the contract and sue for damages. *See Cary Oil Co., Inc. v. MG Refining & Marketing, Inc.,* 90 F.Supp.2d 401, 408–09 (S.D.N.Y.2000); *AM Cosmetics Inc. v. Solomon,* 67 F.Supp.2d 312, 317 (S.D.N.Y. 1999). Alternatively, the non-breaching party may "choose to continue performance under the contract despite that breach." *Id.* However, if the non-breaching party chooses not to terminate the contract, it loses the right to terminate the contract on the basis of the earlier breach. *Id.*

 In this case, the plaintiffs acknowledge that they breached the Settlement Agreement by failing to make timely payment of funds due and by failing to transfer to the defendants the enumerated patent rights. The defendants argue that after this breach, they promptly terminated the contract, and were relieved from any further obligations arising from the Settlement Agreement, by invoking the default provisions that provided for the case to be reopened and by suing to have Judgment entered in the amount of $3,200,000. The plaintiffs now argue that although they breached the Settlement Agreement, the defendants did not terminate the Settlement Agreement, because the defendants relied on § IV of the Settlement Agreement and its default provisions to obtain the Judgment of $3,200,000, and therefore the Settlement Agreement continues to remain a valid and binding contract. Consequently, the plaintiffs argue that the defendants are still liable for their obligations under § V of the Settlement

Agreement dealing with the sale of the Leadsinger abroad.

The plaintiffs' argument is without merit. It is undisputed that the plaintiffs breached the Settlement Agreement. Section IV of the Settlement Agreement, upon which the defendants did rely in obtaining the Judgement of $3,200,000, served as the liquidated damages provision in the Settlement Agreement, because it outlined the remedies available to NAS–Transtech and Transtech in light of a breach by the plaintiffs. The fact that the defendants relied upon § IV of the Settlement Agreement to reopen the litigation and to have the Court enter Judgment does not mean that the defendants did not terminate the contract or that they continue to be obligated to perform their obligations, notwithstanding the plaintiffs' failure to perform their obligations. It is clear that by using § IV of the Settlement Agreement, the defendants were terminating the contract and suing for damages. Section IV is a provision that can only be invoked if there was a breach, because § IV provided that in an event of a default, the defendants "*may* . . . move to reopen the New York Federal Action and enter Judgment against . . . Jerry Choe, Pil Yong Choe, and NAS Electronics, Inc., jointly and severally, in the principal amount of U.S. $3,200,000 . . .*" (Settlement Agreement § IV) (emphasis added). In the absence of any breach, § IV did not impose any obligation on either the plaintiffs or the defendants, and as a matter of law, can only be interpreted as a liquidated damages provision. *See, e.g., Kentelle v. Devori Int'l,* No. 85 Civ. 5906, 1987 WL 19637, at *1–*2 (S.D.N.Y. Oct. 29, 1987) (interpreting provision allowing for non-breaching party to recover specified damages in light of breaching party's failure to pay amounts due under settlement agreement to be a liquidated damages provision).

Moreover, because the defendants did not seek some alternative remedy to the $3,200,000 Judgment, it is clear that the defendants were terminating the contract, and not simply declaring a partial breach and permitting the remaining contract terms to be enforceable. Therefore, the defendants' invocation of § IV to reopen the case and to obtain a judgment for liquidated damages can only be interpreted as a termination of the contract, and not as a waiver of the plaintiffs' breach that would cause the remaining terms, and the obligations thereto, to remain in force. As a result of the plaintiffs' breach, the defendants were no longer obligated to carry out the remaining terms of the Settlement Agreement. *See Municipal Capital Appreciation Partners I, L.P. v. Page,* 181 F.Supp.2d 379, 395 (S.D.N.Y.2002) ("The injured party's claim for damages for total breach takes the place of the its remaining substantive rights under the contract.")(quotations omitted). The plaintiffs do not have a claim for breach of contract and the defendants' motion for summary judgment is granted.[1]

---

1. To the extent that the plaintiffs have argued that the only means for them to pay the $3,200,000 Judgment is to be able to sell the Leadsinger in European Russia, that argument does not in any way indicate why the breach of contract claim should not be dismissed, in light of the plaintiffs' breach. At best, this argument is relevant to whether Judgment should have been entered in the first instance, and the Court found previously that the default provisions, contained in § IV of the Settlement Agreement, were stand alone provisions in the contract, not conditioned or contingent upon any other parts of the Settlement Agreement. *See Transtech Electronics,* 2000 WL 381428, at *3. The Settlement Agreement provided for the prompt entry of a judgment and limited the issues that could be considered in entering the judgment. This was reasonable in view of the provisions of the Settlement Agreement that required, for example, the dismissal of the New York State and Singapore actions with prejudice.

### C.

The defendants have moved to dismiss the plaintiffs' claim for tortious interference with contract, arguing that the plaintiffs, to the extent they base their claim on the Settlement Agreement, have failed to show that the defendants have interfered with a contract entered into between the plaintiffs and a third-party.[2] In addition, the defendants have argued that they are entitled to summary judgment on any claim for tortious interference, even if the allegations in the original Complaint are supplemented by the plaintiffs' allegations in their proposed Amended Complaint. The defendants rely on all of the evidence submitted in connection with the summary judgment motion and the plaintiffs also rely on the affidavits they submitted in connection with the motion to amend the Complaint. In view of the evidentiary materials relied on by both parties, the Court indicated at oral argument that it would treat the defendants' motion to dismiss as a motion for summary judgment. It gave the plaintiffs the opportunity to submit any additional evidence, but the plaintiffs indicated that they would rely on the affidavits they had already submitted. Having given notice and the opportunity to present additional evidence, the Court will treat the motion to dismiss the tortious interference claim as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b); *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052–53 (2d Cir.1995) (upholding district court's conversion of motion to dismiss into motion for summary judgment where non-moving party had adequate notice and sufficient opportunity to respond).

■ The elements of a claim for tortious interference with contract are that: (1) a contract existed between the plaintiffs and a third party, (2) the defendants knew about the contract; (3) the defendants intentionally induced the third party to breach the contract or rendered performance impossible without justification; and (4) the plaintiffs incurred damages as a result of this conduct. *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d 1370, 1375 (1996); *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 595 N.Y.S.2d 931, 612 N.E.2d 289, 292 (1993).

■ With respect to any tortious interference claim based on the Settlement Agreement, the plaintiffs have not alleged that there existed a contract between the plaintiffs and any third party or that the defendants interfered with a contract between the plaintiffs and a third party. To the extent that the plaintiffs have alleged that the defendants tortiously interfered with the Settlement Agreement, the plaintiffs' claim must be dismissed because there is no third party to the Settlement Agreement. Also, the defendants were a party to the Settlement Agreement and a claim of tortious interference cannot be raised against a defendant who is a party to the contract. *Kosson v. Algaze*, 203

---

**2.** On a motion to dismiss, the allegations in the Complaint are accepted as true. *See Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.1998). In deciding a motion to dismiss, all reasonable inferences are drawn in the plaintiffs' favor. *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is le-gally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). Therefore, the defendants' motion to dismiss should only be granted if it appears that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Grandon*, 147 F.3d at 188; *Goldman*, 754 F.2d at 1065.

A.D.2d 112, 610 N.Y.S.2d 227, 228 (1994); *Shred–It USA, Inc. v. Mobile Data Shred, Inc.*, 202 F.Supp.2d 228, 237 (S.D.N.Y. 2002).

■■■ The plaintiffs have attempted to file an Amended Complaint that contains a claim for tortious interference not based on the Settlement Agreement. In addition to a proposed Amended Complaint, they have submitted an affidavit of Jerry Choe dated November 30, 2002 in which Jerry Choe asserts that the defendants interfered with an agreement dated April 26, 1997 among Yang Trading, Ltd. ("Yang"), NAS Electronics and NAS Transtech ("Yang Agreement") which allegedly provided for the distribution of Leadsinger in Russia.

Summary judgment for the defendants is appropriate with respect to the claim for tortious interference alleged in the Amended Complaint, alleging interference with the Yang Agreement. First, as explained below, the plaintiffs' application seeking leave to file an Amended Complaint is denied, and therefore there is no claim for tortious interference that would entitle the plaintiffs to relief. *See infra* § III(B). Second, to the extent that the plaintiffs allege that the defendants have interfered with the plaintiffs' rights to sell the Leadsinger in Russia, there is no dispute that the plaintiffs had no rights to sell the Leadsinger in Russia, because the plaintiffs had transferred those patent rights to Yang and did not have those rights at the time they entered into the Settlement Agreement with the defendants. (*See* Dep. of Jerry Choe dated Oct. 11, 2002 at 69–70.) (admitting that rights to sell Leadsinger in Russia were transferred before the Settlement Agreement was executed). The defendants could not have interfered with rights that the plaintiffs did not even have. Moreover, the plaintiffs obtained no rights to sell the Leadsinger in European Russia under the Settlement Agreement because they breached the terms of that Agreement and the Agreement was thereafter terminated. Third, the terms of the Yang Agreement do not involve the distribution of proprietary rights to sell Leadsinger in Russia, but rather is an agreement involving the extension of lines of credit and the execution of purchase orders between the parties. In fact, the Leadsinger is never mentioned in the agreement, and the agreement appears to be directed to the development of various software and related products. (*See* Yang Agreement attached as Exh. F. to Aff. of Jerry Choe sworn to Nov. 30, 2002.) The defendants cannot be liable for interfering with rights that are not specified in the contract on which the plaintiffs rely.

For these reasons, the defendants could not be found liable for tortious interference with respect to the Yang Agreement, and the motion for summary judgment is granted.

## D.

The defendants have moved to dismiss the plaintiffs' claim for slander, arguing that the plaintiffs have failed to identify with particularity the specific statements alleged to constitute slander or to identify the circumstances under which those statements were allegedly made.

■■■ Under New York law, to state a prima facie case of slander, a plaintiff must satisfy the following seven elements:

(1)a defamatory statement of fact; (2) that is false; (3) published to a third party; (4) "of and concerning" the plaintiff; (5) made with the applicable level of fault on the part of the speaker; (6) either causing special harm or constituting slander per se; and (7) not protected by privilege.

*Albert v. Loksen,* 239 F.3d 256, 265–66 (2d Cir.2001).

The plaintiffs' claim must be dismissed because the Complaint fails to allege a defamatory statement of fact. Whether statements are susceptible of a defamatory connotation is a threshold legal determination to be made by the court. *Id.* at 267 (collecting cases). A statement may be considered defamatory if, among other things, it tends to "expose [the plaintiff] to public hatred, shame ... aversion, ... disgrace, or ... induces an evil opinion of one in the minds of right-thinking persons." *Id.* at 266 n. 6 (quotations omitted). While a complaint need not contain the exact words that constitute slander, the plaintiffs must allege facts that provide "an adequate identification of the purported communication, and an indication of who made the communication, when it was made and to whom it was communicated." *Broome v. Biondi,* No. 96 Civ. 0805, 1997 WL 83295, at *2 (S.D.N.Y. Feb. 10, 1997).

The plaintiffs have failed to identify any communication that could be considered to be the basis of an allegation of slander. Only one paragraph of the Complaint even refers to communications and that paragraph indicates only that various defendants made statements to unidentified Russian customers, without alleging when those statements were made or what the possible content of those statements was. (Compl.¶ 22.) Moreover, the substance of the allegation is that the defendants in this case won a great victory over the plaintiffs, that they got a judgment for a huge amount of money, and that the plaintiffs were effectively out of business—none of which the plaintiffs have shown to be false in any way. The plaintiffs do allege that the defendants failed to say that the defendants were barred from sales in Russia and that the defendants were allegedly breaching their agreement with the plaintiffs. But there is no evidence that such

statements would have been true and the failure to make such statements could not be found to be false statements of fact. The Complaint falls far short of alleging the facts or circumstances of any statements or why those statements could be considered to be slanderous and the plaintiffs' claim for slander must be dismissed.

In any event, the plaintiffs have abandoned their claim for slander, because they failed in their responsive briefs to answer any of the arguments raised by the defendants or to indicate that there was any remaining basis for pursuing the claim for slander. *See, e.g., City of New York v. Minetta,* 262 F.3d 169, 181 (2d Cir.2001); *Levy v. Bessemer Trust Co., N.A.,* No. 97 Civ. 1785, 2000 WL 1300402, at *2 (S.D.N.Y. Sept. 14, 2000); *Smith v. City of New Haven,* 166 F.Supp.2d 636, 642 n. 2 (D.Conn.2001).

## E.

The defendants have also moved to dismiss the plaintiffs' claim for a preliminary injunction. As the defendants correctly point out, a preliminary injunction is a form or relief, and not a claim or a cause of action, and because there is no claim present that would justify the granting of a preliminary injunction, the plaintiffs asserted fifth cause of action for such relief must be dismissed. Moreover, the plaintiffs raised the issue of a preliminary injunction originally as an attempt to prevent the sale of property owned by Jerry Choe, and because Justice Kapnick denied the request to stay such a sale and because the sale actually took place, the question of whether the plaintiffs are entitled to a preliminary injunction is now moot. Finally, the plaintiffs have abandoned their claim for a preliminary injunction by failing to respond the defendants' arguments. For these reasons, the plaintiffs' claim for a preliminary injunction is dismissed.

## III.

### A.

The plaintiffs have cross-moved for summary judgment on their breach of contract claim. Because the defendants' motion for summary judgment is being granted, the plaintiffs' motion must be denied.

■■■ In any event, the plaintiffs' motion would also be denied because it is procedurally defective. First, the motion is time barred because it was filed after the time for serving dispositive motions had passed. The plaintiffs only filed their motion on December 2, 2002, even though the deadline for serving dispositive motions, as provided for in the second scheduling order entered pursuant to Fed.R.Civ.P. 16, expired on November 8, 2002. The failure to abide by the Court's scheduling order without any showing of good cause is sufficient grounds to deny the plaintiffs' motion for summary judgment. *See Gold v. Local Union No. 888,* 758 F.Supp. 205, 209–10 (S.D.N.Y.1991); *see also Julian v. Equifax Check Services, Inc.,* 178 F.R.D. 10, 15 (D.Conn.1998) (noting "a party may file a motion for summary judgment 'at any time' until the time limit for filing motions under a district court's Federal Rule 16(b) scheduling order expires"). Second, the plaintiffs failed to submit a Rule 56.1 statement of undisputed facts, and this failure is independent grounds to deny the motion. *See* Local Rule 56.1(a) (noting that "[f]ailure to submit such a statement may constitute grounds for denial of the motion").

### B.

■■■ The plaintiffs have also sought leave to file an Amended Complaint. Leave to file an amended complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Before leave is granted, however, a motion to amend the pleadings must satisfy the terms of this Court's scheduling order entered pursuant to Fed.

R.Civ.P. 16(b). *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 340 (2d Cir. 2000). This Court retains the discretion to deny a party's motion to amend the pleadings, if, absent a showing of good cause, the motion is made after the time provided in the Court's Rule 16(a) scheduling order. *Id.* Determining whether a party has shown "good cause," "depends on the diligence of the moving party." *Id.*

■■■ The plaintiffs now seek to file an Amended Complaint well after the time for making such an amendment has passed, and indeed after the close of discovery and after a motion for summary judgment has been made against them. The Court's first scheduling order provided that except for good cause shown, no additional parties were to be joined or causes of action asserted after July 19, 2002, and that no additional defenses may be asserted after July 29, 2002. (Civil Scheduling Order dated June 26, 2002.) The plaintiffs sought to amend the Complaint well after that date, on December 2, 2002. Additionally, at no time did the plaintiffs seek an extension of time to file an amended pleading, and filed their present motion without reference to the civil scheduling order, ignoring it entirely. The plaintiffs simply submitted their motion to amend the Complaint without any attempt to obtain leave to file a late motion to amend the Complaint or to show good cause. While the papers in support of the motion discuss details developed in discovery, it is clear the essence of the plaintiffs' claim which arose out of the alleged sales by the defendants into the Russian market were made in the original Complaint. (*See* Compl. ¶¶ 19–24.) The plaintiffs had knowledge of the facts and circumstances in the case for a period of several years and could have made their motion within the specified time period. This lack of diligence and absence of good cause for such a delay

requires that the plaintiffs' motion to amend be denied as untimely. *See Parker,* 204 F.3d at 340–41.

■ Moreover, even had the plaintiffs shown good cause to make an untimely amendment, the plaintiffs motion to amend does not satisfy the requirements of Rule 15(a). Rule 15(a) amendments are to be freely granted "in the absence of a showing by the nonmovant of prejudice or bad faith." *Block v. First Blood Assoc.,* 988 F.2d 344, 350 (2d Cir.1993). As the Court of Appeals has explained, the degree of prejudice varies inversely with the period of delay in seeking the amendment— "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Id.* (quotations omitted). In deciding what is prejudice, the Court must consider whether the proposed amendment to the pleadings would "(1) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the plaintiff from bringing a timely action in another jurisdiction." *Id.* (quotations omitted).

■ In this case, the long period of delay between the filing of the original complaint and the motion to file an Amended Complaint constitutes sufficient prejudice to deny the plaintiff's motion to amend. The case was originally commenced in New York state court on January 8, 2001 and the plaintiffs waited nearly two years to seek leave to file an Amended Complaint. Such a long delay has been found sufficient to constitute prejudice so as to deny a motion to amend, even under the Rule 15(a) liberal "freely given" standard. *See Zahra v. Town of Southold,* 48 F.3d 674, 685–86 (2d Cir.1995) (motion to amend appropriately denied when made two and one-half years after commencement of action); *see also State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld,* 921 F.2d 409, 417–18 (2d Cir. 1990). The motion to amend is also prejudicial because it is brought at a late stage of the litigation after discovery has been completed and only in response to the defendants' motion for summary judgment. If the motion were to be granted, discovery would have to be reopened because the Amended Complaint seeks to add two additional defendants to the action and they would be entitled to additional time to conduct discovery and to prepare their defenses. As the Court of Appeals has explained "a proposed amendment is especially prejudicial when discovery [has] already been completed and [the] nonmovant [has] already filed a motion for summary judgment." *Krumme v. West-Point Stevens Inc.,* 143 F.3d 71, 88 (2d Cir.1998) (quotations and internal punctuation omitted). The prejudice to the defendants from reopening discovery in this case is sufficient to deny the plaintiffs leave to file the Amended Complaint. *Id.; Cahill v. O'Donnell,* 75 F.Supp.2d 264, 279 (S.D.N.Y.1999) ("Our Circuit has consistently found prejudice and denied amendments where discovery has already been completed and summary judgment motions have been filed.")

### C.

■ The plaintiffs have also cross-moved to reopen discovery. This motion to reopen discovery is denied because the motion to reopen discovery violates the terms of the second scheduling order which required that discovery be completed by October 25, 2002. The plaintiffs never requested an extension of the discovery deadline, and only sought to reopen discovery in response to the defendants' motion for summary judgment. The plaintiffs should have taken discovery and made any discovery motion prior to the deadline for the completion of discovery. The

plaintiffs also could have used the time between October 25, 2002 and the December 2, 2002 to ask that additional discovery be made available, but let the time pass by without filing any motion for a discovery extension, and simply filed their discovery motion in their responsive papers to the defendants' motion. In addition, there has been no attempt by the plaintiffs to show that the discovery they seek is necessary to oppose the defendants' motion for summary judgment, as may be permitted under Fed.R.Civ.P. 56(f), or any attempt to show why the discovery was not pursued in a diligent fashion before the motion for summary judgment was filed. Such egregious circumstances justify denying the plaintiffs' motion to reopen discovery. *See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 927–28 (2d Cir.1985)("A party who both fails to use the time available and takes no steps to seek more time until after a summary judgment motion has been filed need not be allowed more time for discovery absent a strong showing of need.").

The plaintiffs' motion to reopen discovery asserts that a witness, Alan Tan, was not produced a deposition until after the discovery deadline had passed, that various documents, including invoices, were not produced at all by the defendants, and that Mr. Tan was not truthful during his original deposition and should be produced for another deposition.[3] (*See* Aff. of Paul W. Siegert ("Siegert Aff") sworn to December 2, 2002 ¶¶ 16–27.) To the extent these assertions indicate that the plaintiffs' motion to reopen discovery is a means of asserting various allegedly unresolved discovery disputes and objections, such a discovery motion is also denied. Discovery disputes should have been raised before the discovery deadline had passed, particu-

larly in view of the fact that the discovery deadline had been extended. Moreover, before any such discovery motion can be made, the plaintiffs must request a discovery conference. *See* Local Civil Rule 37.2. The failure to request such a conference requires that any motion based on the alleged failure to be given documents, to produce deposition witnesses in a timely manner, or to produces witnesses a second time, be denied.

In any event, any discovery disputes, even if resolved in favor of the plaintiffs, would not alter the outcome of the present motions. For the reasons explained above, the defendants are entitled to summary judgment or dismissal of the plaintiffs' various causes of action, and there is no showing how the production of additional documents or a further deposition of Mr. Tan would affect the dismissal of all of the plaintiffs' claims. Summary judgment is appropriate on the claim for fraud on the grounds of collateral estoppel and res judicata and on the breach of contract claim because the plaintiffs' own breach precludes recovery. The plaintiffs' final three claims must also be dismissed. Additional discovery would in no way affect the disposition of the defendants' motions, and the plaintiffs' motion is therefore denied.

### CONCLUSION

For the reasons explained above, the defendants' motion for summary judgment and to dismiss is granted with respect to all of the plaintiffs' claims. The plaintiffs' motion for partial summary judgment is denied. The plaintiffs' motions to file an Amended Complaint and to reopen discovery is also denied.

---

3. The deposition transcript actually indicates that Mr. Tan was deposed on October 22, 2002, before the October 25, 2002 discovery deadline had expired.

The Clerk is directed to enter Judgment and to close the case.

**SO ORDERED.**